**Stephen M. BARRY**

v.

**MORTGAGE SERVICING ACQUISITION CORPORATION, d/b/a National Mortgage Company, and B First Residential Corporation.**

**No. CA 94–470ML.**

United States District Court, D. Rhode Island.

Oct. 8, 1996.

Alden C. Harrington, Providence, RI, Edward K. O'Brien, Needham, MA, Daniel A. Edelman, Chicago, IL, Charles M. Baird, Atlanta, GA, for plaintiff.

Steven E. Snow, Providence, RI, for defendants.

### MEMORANDUM AND ORDER

LISI, District Judge.

This matter is before the court pursuant to an objection filed by plaintiff Steven M. Barry to a Report and Recommendation issued by United States Magistrate Judge Robert W. Lovegreen on December 13, 1995 in which Magistrate Judge Lovegreen recommended the dismissal of Barry's class action.

### I. BACKGROUND

Barry commenced this class action on September 7, 1994, alleging that three defendants, the Mortgage Servicing Acquisition Corporation, d/b/a the National Mortgage Company ("National"), the B First Residential Corporation ("B First"), and the Texas Bank of Commerce ("Texas Bank"),[1] had violated the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601–67, as well as a number of state consumer credit cost disclosure laws.[2] Barry avers that it was the practice and policy of the defendants to systematically understate the "Finance Charge" and overstate the "Amount Financed" in the consumer credit transactions into which they entered. Specifically, Barry alleges that each of the defendants failed to include charges associated with the transportation of checks and documents in the "Finance Charge" section on disclosures required under TILA, yet included the charges as part of the amount financed.

On November 22, 1994, defendant B First filed a motion to dismiss Barry's class action complaint on the grounds that Barry failed to move for a determination as to whether the action could be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure within sixty days, as required by Local Rule 30(c). Barry filed a motion to certify the class on the following day, and an objection to the motion to dismiss on November 28, 1994.[3] With respect

---

1. This court entered an order on November 30, 1995 adopting a Report and Recommendation issued by Magistrate Judge Lovegreen in which he recommended the dismissal of all claims against Texas Bank for lack of personal jurisdiction.

2. On October 13, 1994, Barry filed a motion for leave to amend his complaint. This motion was granted without objection by Magistrate Judge Lovegreen on November 1, 1994. Barry filed an amended complaint on November 9, 1994. Barry sought leave to amend his complaint a second time on October 6, 1995, but that motion was denied in an order entered by Magistrate Judge Lovegreen on December 13, 1995, and affirmed on appeal to this court on May 22, 1996.

3. Barry identified three classes of plaintiffs he purports to represent. Class "A" consists of all persons, located anywhere in the United States, who entered into consumer credit transactions with B First in which Truth in Lending disclosures were required. Class "C" consists of all persons, located anywhere in the United States, who entered into consumer credit transactions with National in which Truth in Lending disclosures were required. Class "B" consisted of all persons, located anywhere in the United States, who entered into consumer credit transactions with Texas Bank. As the claims against Texas Bank were dismissed, the issues surrounding the certification of this class are no longer relevant.

to the motion to dismiss, Barry argued that the sixty day time period detailed in Rule 30(c) began to run from the filing of the Amended Complaint and that, therefore, the motion to dismiss was premature. Alternatively, Barry argued that the sixty day time limit was not "absolute," but rather that its enforcement was within "the court's informed discretion." Memorandum of Law in Support of Plaintiffs' Objection to Motion of B First Residential Corporation to Dismiss Plaintiffs' Class Action Complaint, at 3–4.

This court referred the motion to dismiss to Magistrate Judge Lovegreen on February 28, 1995. On May 18, 1995, prior to the commencement of a hearing on the motion to dismiss, Congress enacted legislation implementing a moratorium which prohibited courts from entering orders certifying any class action brought under TILA until October 1, 1995. *See* Truth in Lending Class Action Relief Act of 1995, Pub.L. No. 104–12, 109 Stat. 161. This legislation was enacted in an effort to combat the flurry of class action lawsuits, including the one at bar, which were commenced as a result of the Eleventh Circuit's decision in *Rodash v. AIB Mortgage Co.*, 16 F.3d 1142 (11th Cir.1994). There, the court held that certain courier fees, as well as other fees related to intangible taxes, must be disclosed as part of the finance charge on disclosure forms required under TILA. *See id.* at 1147–49.

A hearing on the defendants' motion was held soon after the expiration of the moratorium, on October 31, 1995. In the intervening time period, however, Congress acted to permanently amend TILA in an effort to curb the number of *Rodash* suits that could be sustained. These amendments (hereafter the "1995 Amendments") altered the TILA provisions both prospectively and retroactively.

At the hearing, the court and the parties recognized that, as a result of the enactment of the 1995 Amendments, the issues surrounding the viability of the class action transcended the question of whether Barry had complied with the local rules. The defen-

dants challenged whether Barry could maintain the class action in light of some of the changes to TILA contained in the amendments. In recognition of the fact that neither party had had the opportunity to brief the issues surrounding the applicability of the 1995 Amendments prior to the October 31 hearing, Magistrate Judge Lovegreen declined to issue a recommendation with respect to the defendants' motion to dismiss at that time. Instead, he ordered the parties to submit supplemental memoranda discussing the viability of the class action in light of the 1995 Amendments, and scheduled a second hearing on the motion for December 12, 1995.

When the parties reconvened before Magistrate Judge Lovegreen on December 12, 1995, the primary focus of the hearing was on the applicability of the 1995 Amendments, which Barry averred were unconstitutional, and whether the class action should be dismissed on those grounds. The defendants renewed their argument that the 1995 Amendments' proscriptions with respect to class actions prevented Barry from maintaining this class action because Barry had not identified any potential class members who could still sustain a cause of action against the defendants. Barry, while suggesting that the amendments did not have the effect the defendants asserted they did, argued primarily that the 1995 Amendments were unconstitutional.

At the conclusion of the parties' arguments on this issue, Magistrate Judge Lovegreen announced his intention to recommend to this court that the class action be dismissed.[4] Magistrate Judge Lovegreen based this decision on a number of factors: first, that the amendments served to remove the ability of the defined classes to maintain actions under TILA; second, that the 1995 Amendments were presumed to be constitutional absent a successful challenge by a viable party; and, third, that Barry lacked standing to challenge the constitutionality of the amendments on behalf of the purported class members.

---

**4.** The written order containing Magistrate Judge Lovegreen's recommendations entered the fol-

lowing day, December 13, 1995.

## II. PROCEDURAL POSTURE

Before addressing the merits of Barry's objection, it is necessary for this court to elucidate the procedural posture of this case. This motion began as, and existed as such when referred to Magistrate Judge Lovegreen, a relatively straightforward motion to dismiss pursuant to Local Rule 30(d). Notwithstanding this fact, the enactment of the TILA class action moratorium and, subsequently, the 1995 Amendments, muddied the procedural waters. At the two hearings held by Magistrate Judge Lovegreen on the motion to dismiss, both the parties and the court focused on issues surrounding the applicability and constitutionality of the 1995 Amendments. These issues are clearly unrelated to the narrowly defined parameters of Local Rule 30(d), which establishes as the sole ground for granting a motion to dismiss the question of whether or not a plaintiff has made a timely motion to certify a class. The parties addressed the Rule 30(d) motion only in passing.

This court will first address the defendants' motion to dismiss pursuant to Local Rule 30(d), then proceed to analyze Magistrate Judge Lovegreen's Report and Recommendation with respect to the effects of the 1995 Amendments on this case.

## III. DISCUSSION

### A. Standard of Review

■ At the outset, it is incumbent upon this court to determine the correct standard of its review. In addressing objections to pretrial orders issued by a magistrate judge, it is necessary to distinguish between orders that address dispositive matters and those that do not. In reviewing an objection to a magistrate judge's recommendation with respect to a dispositive issue, a district court "shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made...." Fed.R.Civ.P. 72(b). The order entered by Magistrate Judge Lovegreen in this case clearly concerned a dispositive pretrial matter: whether or not to dismiss this class action. As such, this court will conduct a plenary review of Magistrate Judge Lovegreen's Report and Recommendation.

### B. Local Rule 30

■ Local Rule 30 is applicable to "any action sought to be maintained as a class action," and is divided into four subsections. D.R.I.Loc.R. 30. The first two sections, sections (a) and (b), delineate the formalities to be followed in drafting a class action complaint. See id.[5]

It is the latter two sections of Rule 30 that lie at the center of the defendants' original motion to dismiss, however. These sections address the procedures to be followed in order for parties to obtain certification of their class actions pursuant to Rule 23 of the

---

**5.** Sections (a) and (b) of Local Rule 30 provide as follows:

(a) *Designation.* The complaint shall bear next to its caption the designation "Complaint—Class Action." Comparable designations shall appear on any other pleading (counter-claim or cross claim) asserting a claim for or against a class.

(b) *Class action allegations.* The complaint (or other pleading asserting a claim for or against a class) shall contain next after the jurisdictional grounds and under the separate heading "Class Action Allegation":

(1) A reference to the specific part or parts of Rule 23(b) of the Federal Rules of Civil Procedure, under which it is claimed that the action is properly maintainable as a class action.

(2) Appropriate averments to justify such claim including, but not necessarily limited to,

(i) the number or approximate number of the members of the class,

(ii) a description of the members of the class,

(iii) the basis upon which it is claimed that the party asserting the claim will fairly and adequately protect the interest of the class, or, if the claim is asserted against a class, that the named members of the class will fairly and adequately protect the interests of that class,

(iv) the questions of law or fact claimed to be common to the class, and

(v) in actions claimed to be maintainable as class actions under subdivision (b)(3) of Rule 23 of the Federal Rules of Civil Procedure, averments to support the findings required by that subdivision, including those noted under (A), (B), (C) and (D) of the subdivision.

D.R.I. Loc.R. 30(a) & (b).

Federal Rules of Civil Procedure. Section (c) provides, in pertinent part, that

> [w]ithin sixty (60) days after the filing of a pleading asserting a claim for or against a class, the party asserting that claim shall move for a determination under subdivision (c)(1) of Rule 23 of the Federal Rules of Civil Procedure as to whether the action is to be maintained as a class action and, if so, the membership of the class.

*Id.* Section (d) provides that "[i]f the party asserting the claim for or against a class fails to make a timely motion under subsection (c) of this rule, the opposing party shall move, within 30 days after expiration of the time allowed for such motion, to dismiss the action as a class action." *Id.*

In this case, Barry filed his original class action complaint on September 7, 1994. On November 1, 1994, this court granted Barry's motion for leave of court to file an amended complaint, which Barry filed on November 9, 1994. The defendants filed the Rule 30(d) motion to dismiss on November 22, 1994, seventy-six days after Barry filed the original complaint.

■ When confronted with a motion to dismiss pursuant to Local Rule 30, this court is given great latitude to decide the merits. The local rule explicitly provides that in ruling upon such a motion, "the court may grant or deny it in the exercise of its informed discretion...." *Id.* Moreover, there is no case law offering this court guidance as to the factors that should be considered in exercising this discretion.

This court finds that the circumstances in this case do not warrant the invocation of such a harsh remedy. While Barry's Rule 23 motion was filed more than sixty days after the filing of the original complaint, it was filed only sixteen days after the amended complaint was filed, and prior to the time that Barry received all of the defendants' answers to the amended complaint. These filing dates are particularly important in this case because the transaction underlying this cause of action was first correctly identified in the amended complaint. Moreover, the defendants have not alleged any prejudice arising from Barry's failure to seek class certification within the sixty days following the filing of the original complaint.

Accordingly, this court denies the defendants' motion to dismiss pursuant to Local Rule 30, and proceeds to examine the generalized motion to dismiss the class action portion of the complaint.

### C. *Failure to State a Claim*

■ The genesis of the discussion of the dismissal of the class action on more generalized grounds was the enactment of the 1995 Amendments. The defendants argued that the 1995 Amendments increased the "tolerance level" for discrepancies between the finance charges disclosed by a lender and those actually charged. Consequently, the defendants averred that the purported class members were excised from the class of individuals with redressable injuries and, therefore, that the proffered classes of plaintiffs Barry had hoped to represent no longer had claims to be litigated.

Barry countered this assertion by arguing that the 1995 Amendments did not serve to raise the tolerance level for finance charge discrepancies. Barry asserted that the enactment of the 1995 Amendments had no discernable effect on the maintenance of this class action. Alternatively, Barry argued that, even if the 1995 Amendments could be interpreted to remove the purported class members from the ambit of the injured, the amendments were unconstitutional and that he was the appropriate representative of those persons who theretofore were defined as injured under TILA for purposes of challenging the constitutionality of the 1995 Amendments.[6]

This court begins its examination of Magistrate Judge Lovegreen's recommendation by first looking to the specific provision of the 1995 Amendments which lies at the center of this case. This provision, codified at 15 U.S.C. § 1649(a), provides in pertinent part that:

> For any consumer credit transaction subject to this subchapter that is consummat-

---

6. Barry contends that the 1995 Amendments were enacted in violation of the separation of powers doctrine and, further, that they violate the purported class members' due process rights.

ed before September 30, 1995, a creditor or any assignee of a creditor shall have no civil, administrative, or criminal liability under this subchapter for, and a consumer shall have no extended rescission rights under section 1635(f) of this title with respect to . . .

(3) any disclosure relating to the finance charge imposed with respect to the transaction if the amount or percentage actually disclosed—

(A) may be treated as accurate for purposes of this title if the amount disclosed as the finance charge does not vary from the actual finance charge by more than $200. . . .

15 U.S.C. § 1649 (1996).

The defendants argue that this provision precludes a finding of liability on the part of any lender under TILA resulting from a finance charge disclosure that varies from the actual finance charge by $200.00 or less. Barry contends that § 1649 does not impose such a tolerance *per se*. Rather, he argues that this statute provides for the possibility of such a limitation, that is, if the limitation is established elsewhere in TILA.

In proceeding in this manner, this court is conscious of the "familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *see also United States v. Ramirez–Ferrer*, 82 F.3d 1131, 1136 (1st Cir.1996) (en banc). Indeed, "a statute ordinarily will be construed according to its plain meaning." *In re Thinking Machines Corp.*, 67 F.3d 1021, 1024–25 (1st Cir.1995). The "meaning, or 'plainness,' of discrete statutory language is to be gleaned from the statute *as a whole*, including its overall policy and purpose. 'Literal' interpretations which lead to absurd results are to be avoided." *Summit Inv. and Dev. Corp. v. Leroux*, 69 F.3d 608, 610 (1st Cir.1995) (citations omitted).

In this case, however, it cannot be said that the language of § 1649 is unambiguous. Indeed, this court finds that the language of the statute could plausibly be interpreted in the manner that each party asserts it should

be, evidence that perhaps Congress did not draft the 1995 Amendments as clearly as it could have. Thus, recognizing that when the legislature has "blown an uncertain trumpet," *Sullivan v. C.I.A.*, 992 F.2d 1249, 1252 (1st Cir.1993), an inquiring court should look to the policies, principles, and purposes underlying the statute in order to construe it, this court proceeds to examine the relevant legislative history of the 1995 Amendments in general, and § 1649 in particular. *See In re Thinking Machines Corp.*, 67 F.3d at 1025.

The legislative history behind the 1995 Amendments clearly indicates that they were enacted in direct response to the rash of class action lawsuits that followed the *Rodash* decision. Congressman James A. Leach, the Chairman of the House Committee on Banking and Financial Services, remarked upon introducing the bill to the House that

[t]his bill addresses certain changes to the Truth in Lending Act due to the flood of class action lawsuits that followed the decision in Rodash versus AIB Mortgage Co. This relief is necessary because of the ambiguity surrounding the proper treatment of a number of fees under current law and the extremely low tolerance for lender flexibility in fee disclosure.

141 CONG.REC. H9514 (daily ed. Sept. 27, 1995) (statement of Rep. Leach). These remarks were echoed in the Senate by Senator Alfonse D'Amato, the Chairman of the Senate Committee on Banking, Housing, and Urban Affairs, who stated that the Amendments were "intended to curtail the devastating liability that threatens our housing finance system in the wake of the Eleventh Circuit Court of Appeals' recent decision in Rodash versus AIB Mortgage Co." 141 CONG.REC. S14567 (daily ed. Sept. 28, 1995) (statement of Sen. D'Amato).

Moreover, the legislative history clearly indicates that § 1649 was to have retroactive implications. Congressman Bill McCollum noted that this provision set the "*accuracy tolerance for civil liability on past transaction[s] . . . at $200.*" 141 CONG.REC. H9515 (daily ed. Sept. 27, 1995) (statement of Rep. McCollum) (emphasis added). Statements

during the discussion of this bill in the Senate on the following day mirror those made on the House floor. Senator D'Amato noted that the Amendments provided "retroactive relief from Rodash-styled class actions that are pending certification," 141 CONG.REC. S14567 (daily ed. Sept. 28, 1995) (statement of Sen. D'Amato), while Senator Paul S. Sarbanes noted that the Amendments increased "the tolerance for statutory damages, lifting the bar that determines what constitutes a violation." 141 CONG.REC. S14567 (daily ed. Sept. 28, 1995) (statement of Sen. Sarbanes).

The foregoing discussion makes it clear to this court that the defendants' interpretation of § 1649(a)(3)(A) is the one intended by Congress. Indeed, the legislative history clearly indicates that Congress intended to retroactively increase the tolerance level for disclosure violations under TILA to $200.00. Moreover, there is little question that the new tolerance level applies in this case, since this court did not enter an order certifying the class prior to January 1, 1995. *See* 15 U.S.C. § 1649(b)(2).

The defendants contend that because Barry has failed to allege any disclosure errors in excess of the $200 tolerance level, the class claims advanced by Barry have been extinguished by the 1995 Amendments. In his objection to the Report and Recommendation, Barry fails to address this point. This court finds that Magistrate Judge Lovegreen correctly applied the law to the facts as presented, and adopts the recommendation to dismiss the class action.[7] In so doing, however, this court is careful to note that Barry's individual claim remains intact.[8]

SO ORDERED.

---

7. This court takes note of recent amendments to the consumer credit laws in the State of Massachusetts which establish tolerance levels for erroneous finance charge disclosures identical to those implemented by the 1995 Amendments. *See* 1996 Mass. Acts 238 (to be codified at MASS. GEN.L. ch. 140D, § 35). Thus, Barry's arguments with respect to his ability to maintain the class action based on Massachusetts law, notwithstanding the dismissal of the TILA class action, are rendered moot.

8. It is important to note that the $200.00 tolerance level has no effect on Barry's individual claim because it commenced prior to June 1, 1995. *See* 15 U.S.C. § 1649(b)(1). Thus, regardless of whether the class action suit can be litigated, Barry may still proceed individually.