I would never reach the merits of this case relating to the pleading requirements for a TILA action.  Rather, I would remand to the district court with directions to vacate all orders and remand the case to state court.  I, therefore, respectfully dissent.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2002 FED App. 0073P (6th Cir.)
File Name:  02a0073p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

LATONYA INGE,

*Plaintiff,*

JODY HOLMAN, on behalf of herself and all others similarly situated,

*Plaintiff-Appellant,*

*v.*

ROCK FINANCIAL CORPORATION; d/b/a ROCK FINANCIAL CORP.; d/b/a ROCK FINANCIAL; d/b/a BOULDER FINANCIAL; d/b/a FRESH START LOAN CENTER, a Division of Rock Financial; d/b/a FRESH START LOAN CENTER; d/b/a MOVEEASY, a Michigan Corporation,

*Defendant-Appellee.*

No. 00-2003

Appeal from the United States District Court
for the Western District of Michigan at Lansing.
No. 99-00064—Wendell A. Miles, District Judge.

1

Argued:  October 26, 2001

Decided and Filed:  February 26, 2002

Before:  JONES and CLAY, Circuit Judges; DOWD,
District Judge.[*]

_____

**COUNSEL**

**ARGUED:**  Christopher G. Hastings, DREW, COOPER &
ANDING, Grand Rapids, Michigan, for Appellant. James J.
Walsh, BODMAN, LONGLEY & DAHLING LLP, Ann
Arbor, Michigan, for Appellee. **ON BRIEF:** Christopher G.
Hastings, John E. Anding, DREW, COOPER & ANDING,
Grand Rapids, Michigan, for Appellant.  James J. Walsh,
BODMAN, LONGLEY & DAHLING LLP, Ann Arbor,
Michigan, George G. Kemsley, BODMAN, LONGLEY &
DAHLING LLP, Detroit, Michigan, for Appellee.

    CLAY, J., delivered the opinion of the court, in which
JONES, J., joined.  DOWD, D. J. (pp. 23-28), delivered a
separate dissenting opinion.

_____

**OPINION**

_____

    CLAY, Circuit Judge.  Plaintiff, Jody Holman, seeks our
review of the district court's dismissal of her second amended
complaint for failure to state a claim against Defendant, Rock
Financial Corporation, under the Truth in Lending Act
("TILA"), 15 U.S.C. §§ 1601-15, and subsequent denial of
her post-dismissal request to file a third amended complaint.
For the following reasons, we **REVERSE** the district court's

_____

[*] The Honorable David D. Dowd, Jr., United States District Judge for
the Northern District of Ohio, sitting by designation.

contained in the Complaint, causing the "removal clock" to
start running on March 8, 1999, the date of service, and
rendering the May 13, 1999 removal untimely.

    On June 21, 1999, plaintiffs made essentially the same
point in a motion to remand wherein they argued that "[u]nder
black-letter law, citation to Regulation X in a brief, or
reliance on an aspect of Federal law to support a state law
claim, does not confer federal court jurisdiction." (R. 6, ¶ 3).
Plaintiffs later withdrew their motion to remand and, instead,
moved for leave to amend their complaint.  The district court
granted the motion and, *for the first time*, a Truth-in-Lending
("TILA") claim under 15 U.S.C. § 1601, *et seq.*, was asserted.
Removal jurisdiction, however, is determined  from the face
of the well-pleaded complaint, *Rivet v. Regions Bank of
Louisiana*, 522 U.S. 470, 475 (1998), not a post-removal
amended complaint. Parties cannot create federal jurisdiction
by personal fiat or waiver. *United States v. Griffin*, 303 U.S.
226, 229 (1938).  Even if plaintiffs decided to give up the
fight for remand and stay in federal court, the initially
improper removal cannot be "cured"  by plaintiffs'
acquiescence to federal jurisdiction where there actually is no
federal claim in the "well-pleaded complaint." Further, Fed.
R. Civ. P. 12(h)(3) *requires* a court to dismiss the action
"[w]henever it appears by suggestion of the parties or
otherwise that the court lacks jurisdiction[.]"    On the face of
the *original* Complaint, in my view and apparently in
defendant's view, there was no federal claim alleged. I do not
think that plaintiffs' response to the motion for protective
order, upon which defendant based its removal, was enough
to suggest a federal claim.  Therefore, timely or not, there
simply was no federal claim to remove.

    In summary, I believe that one of two things happened here
with respect to federal question jurisdiction: the district court
either (1) lacked subject matter jurisdiction because no federal
claim was *ever* alleged prior to removal; or (2) improperly
failed to remand a case which had been untimely removed.

(d)   Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer, in violation of Sec. 3(s), including but not limited to:

* * *

ii.    Tending to mislead or deceive the borrower about the actual expense or cost of preparing the "final legal papers," *where HUD regulations provide that the fee is to cover the cost of preparing the "final legal papers"* but the bank failed to reveal the actual cost was less than that charged to the borrower.

(J.A. at 23-24, italics added). Counts 4 and 5 allege "innocent" and negligent misrepresentation with respect to the document preparation fee, although they contain no specific allegations similar to ¶ 35(d)(ii) above relating to HUD documents or regulations. The original Complaint also had several attachments, including a copy of the HUD Guide relating to "Settlement Costs."[3]

Comparing the Complaint and plaintiffs' response to Rock's motion for protective order, I do not believe that the language of *either* document was sufficient to create federal question jurisdiction. Further, if the language in the later-filed response *was* sufficient to trigger removal, I would conclude that virtually identical triggering language was contained in the Complaint. Therefore, I believe that the removal was either *improper* because there never was a federal claim stated in the Complaint or *untimely* because the information contained in plaintiffs' response to the motion for protective order, upon which removal was premised, was *also*

---

[3]This Guide discusses, *inter alia*, a Buyer's Rights, which included a discussion of good faith estimates, Truth-in-Lending and Specific Settlement Services.

dismissal of the second amended complaint, **REVERSE** the district court's denial of leave to file a third amended complaint, and **REMAND**.

## BACKGROUND

On February 27, 1998, Plaintiff borrowed money from Defendant, a real estate lender, to refinance the purchase of her home. In making and settling the loan, Defendant assessed Plaintiff certain fees as part of Defendant's finance charge. Prior to closing the loan, Defendant disclosed some, but not all, of these fees to Plaintiff. Specifically, the HUD-1 settlement statement provided to Plaintiff at closing identified two previously undisclosed fees: a charge of $120 for "Document preparation" and a charge of $200 to the Title Office for "Settlement or closing."

On December 18, 1998, Plaintiff and non-appealing co-plaintiff, LaTonya Inge ("Inge"), filed a complaint, styled as a class action, against Defendant in the Circuit Court for Kent County, Michigan, seeking damages and injunctive relief and alleging in Count I, unfair or deceptive acts or practices pursuant to Mich. Comp. Laws Ann. §§ 19.418(3) and 445.903; in Count II, unauthorized practice of law; in Count III, unjust enrichment; in Count IV, innocent misrepresentation; and in Count V, negligent misrepresentation. Plaintiff and Inge attached to their complaint a good faith estimate of loan closing fees issued to Inge by Defendant, statements of actual loan settlement costs issued by Defendant to Inge and Plaintiff separately ("HUD-1" or "HUD-1A" forms), and a guide to settlement costs published by the United States Department of Housing and Urban Development ("HUD"). Several months later, Defendant removed the civil action to the United States District Court for the Western District of Michigan.

On September 22, 1999, Plaintiff and Inge filed an amended complaint asserting TILA claims against Defendant and attaching copies of the same materials that accompanied the complaint in the state court. On November 8, 1999, Defendant filed a motion to dismiss the amended complaint.

Two weeks later, Magistrate Judge Doyle A. Rowland issued a scheduling/case management order, setting a December 1, 1999 deadline for amendments to the pleadings. Plaintiff and Inge subsequently filed a timely motion for leave to file a second amended complaint, with accompanying brief and proposed second amended complaint. Ten days later, Defendant filed a reply brief in support of its motion to dismiss the amended complaint, addressing matters raised in the proposed second amended complaint. Plaintiff and Inge filed their second amended complaint on January 7, 2000, again attaching HUD-1 documents and a guide to settlement costs by HUD.

On April 11, 2000, the district court granted Defendant's motion to dismiss the TILA claims in the second amended complaint. The district court dismissed Inge's TILA claim as time-barred pursuant to the one-year statute of limitations in 15 U.S.C. § 1640(e).[1] The district court also held that Plaintiff failed to state a claim under the TILA because Plaintiff had failed to plead that the difference between Defendant's initially disclosed finance charge and the actual finance charge exceeded $100, applying the "Tolerances for accuracy" provision of 15 U.S.C. § 1605(f)(1)(A). The court then remanded Plaintiff's remaining state law claims to the Kent County Circuit Court, pursuant to the supplemental jurisdiction and removal statutes, 28 U.S.C. §§ 1367 and 1441(c).

Seven days later, on April 18, 2000, Plaintiff filed a motion for leave to file a third amended complaint, desiring to cure the defects in pleading identified by the district court in its order dismissing Plaintiff's TILA claim. Plaintiff accompanied the motion with a proposed third amended complaint. The third amended complaint elaborated on Plaintiff's claim that a fee assessed for "Document preparation" was not "bona fide and reasonable," citing

---

[1]Inge has not appealed the district court's order dismissing her claim, and is not a party to the instant appeal.

assertion that this case will evaporate after the Court hears Defendant's summary disposition motion is neither consistent with a fair reading of Plaintiff's [sic] well pleaded complaint nor is it supported by the history of the "document preparation cases" that have been filed in the Kent County Circuit Court, including the *Krause* case. . . .

(R. 1, Ex. 7, at 3-4, italics added). Rock asserted that this mention of "Regulation X and the HUD Settlement Costs booklet" was its first indication that plaintiffs were stating a federal claim.

In my view, plaintiffs' mere *mention* of Regulation X (which is not even applicable in this case)[2] and the HUD Settlement Costs booklet was simply *not* a trigger for removal. If it were, then virtually identical language in plaintiffs' Complaint surely should also have triggered removal.

All of the counts of the Complaint were phrased in state law terms; however, Count 1 (the Michigan Consumer Protection Act claim) alleged in part as follows:

35. In the course of charging Plaintiffs and the class members a "document preparation" fee for the service of preparing final legal papers in connection with their real estate mortgage loan operations, Rock Financial violated MCL 445.903; MSA 19.418(3) of the MCPA by engaging in the following unfair, unconscionable, or deceptive methods, acts or practices:

* * *

---

[2]Regulation X is the shorthand name given to 24 C.F.R. Part 3500, the enabling regulations for the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617. *See* 24 C.F.R. § 3500.1 ("This part may be referred to as Regulation X."). The Truth-in-Lending Act is 15 U.S.C. § 1601, *et seq.* and is governed by Regulation Z found in 12 C.F.R. Part 226.

removal must have been based on some "other paper." In fact, the Notice of Removal stated:

On April 15, 1999, plaintiffs filed and served their Response to Defendant's Motion for Protective Order which asserted that their causes of action were based upon federal law. (*See* Exhibit 7 at pp. 3-4). *This pleading was the first paper filed by plaintiff [sic] from which it may be ascertained that the case is one which is removable.*

(R. 1 at 2, italics added). The "Exhibit 7" referenced in the notice was plaintiffs' response to a motion for protective order filed by Rock.

Thus, a determination of whether this case was properly removed requires, first, an analysis of this "other paper" to ascertain whether it contained language that would have triggered removal, and second, a comparison of the "initial pleading" to this "other paper" to ascertain whether, in fact, there was nothing in the initial pleading which would have triggered removal. As explained more fully below, in my view, this dual analysis reveals that the district court had no jurisdiction because the removal was either improper or untimely.

In support of removal on the basis of federal question jurisdiction, the Notice of Removal made reference to "Exhibit 7," the response of plaintiffs to Rock's motion for protective order. In that response, plaintiffs had argued that:

. . . the suggestion that Plaintiff's [sic] claims are grounded solely on the unauthorized practice of law claim, is belied by a close examination of Counts 1, 4 and 5 of the Complaint. Those counts, in addition to focusing on [Rock's] unauthorized preparation of legal documents, challenge [Rock's] charging fees for document preparation that exceed the actual costs of preparing the final legal papers as *defined by Regulation X and the HUD Settlement Costs booklet promulgated pursuant to Regulation X.* Thus, the Defendant's bald

document preparation instructions contained in Appendix A of 24 C.F.R. § 3500 ("Regulation X").

On July 19, 2000, the district court denied Plaintiff's motion for leave to file a third amended complaint. The district court first held that Plaintiff had failed to show "good cause" under Fed. R. Civ. P. 16(b) for modifying the December 1, 1999 amendment deadline set in the scheduling order. In the alternative, the court held that even if Plaintiff's desire to cure defects in the complaint constituted good cause under Rule 16, Plaintiff had not so cured because the third amended complaint still did not satisfy the $100 tolerance.

## DISCUSSION

### I. APPELLATE JURISDICTION

Prior to addressing the merits of Plaintiff's appeal, we must determine our jurisdiction. *See Gen. Acquisition, Inc. v. GenCorp, Inc.*, 23 F.3d 1022, 1024 (6th Cir. 1994). Our appellate jurisdiction extends to "all final decisions of the district courts." 28 U.S.C. § 1291. A district court's decision is "final" for purposes of § 1291 when it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). The question of appellate jurisdiction in this matter arises out of Plaintiff's notice of appeal, filed in the district court on August 15, 2000, wherein Plaintiff references only the district court's July 19, 2000 opinion and order denying leave to file a third amended complaint. Ordinarily, the district court's denial of leave to amend does not constitute an appealable order. *Soliday v. Miami County, Ohio*, 55 F.3d 1158, 1165 (6th Cir. 1995) (citing *Caldwell v. Moore*, 968 F.2d 595, 598 (6th Cir. 1992)). Defendant argues that if any order of the district court should be considered final for purposes of authorizing this appeal, it is the district court's opinion and order dismissing Plaintiff's second amended complaint on April 11, 2000. Because Plaintiff did not take an appeal from the April 11, 2000 order, Defendant argues that we should dismiss this appeal on jurisdictional grounds.

We disagree with Defendant's jurisdictional argument. A timely motion to alter or amend judgment brought pursuant to Fed. R. Civ. P. 59(e) tolls the thirty-day deadline for filing a notice of appeal during the pendency of the motion to alter or amend. *See* Fed. R. App. P. 4(a)(4). Rule 59(e) imposes its own ten-day deadline for a motion to alter or amend. When a party files a motion to reconsider a final order or judgment within ten days of entry, we will generally consider the motion to be brought pursuant to Rule 59(e). *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1047 (6th Cir. 2001); *Vance ex rel. Hammons v. United States*, 90 F.3d 1145, 1148 n.2 (6th Cir. 1996).

Here, seven days after entry of the district court's order dismissing her second amended complaint, Plaintiff filed her motion to file a third amended complaint. Plaintiff's April 18, 2000 motion makes no mention of Rule 59(e) and does not facially purport to be a "motion for reconsideration" of the dismissal order; rather, Plaintiff references only Fed. R. Civ. P. 15, and requests leave to file an amended pleading. Despite the styling of Plaintiff's April 18, 2000 motion, we construe the motion as a timely-filed motion to alter or amend the April 11, 2000 dismissal order. *See Trotter v. Regents of Univ. of N.M.*, 219 F.3d 1179, 1183 (10th Cir. 2000); *Widell v. Wolf*, 43 F.3d 1150, 1151 (7th Cir. 1994); *Bodin v. Gulf Oil Corp.*, 877 F.2d 438, 440 (5th Cir. 1989). Had the district court granted Plaintiff's motion and permitted her to file an amended complaint, it "would have had to set aside and vacate its dismissal order" of April 11, 2000. *Quartana v. Utterback*, 789 F.2d 1297, 1300-01 (8th Cir. 1986). The district court's July 19, 2000 opinion and order denying Plaintiff leave to amend a third time therefore triggered the period for filing her notice of appeal, and Plaintiff timely filed her notice of appeal on August 15, 2000. *See id*. at 1301; *Trotter*, 219 F.3d at 1183; *see also Brown v. Local 58, Int'l Bhd. of Elec. Workers, AFL-CIO*, 76 F.3d 762, 768-69 (6th Cir. 1996) (construing post-dismissal motion to "enter an alternative order" as a Rule 59(e) motion, although the motion did not name Rule 59(e) and sought vacation of dismissal order, rather than a separately entered judgment pursuant to

---

## DISSENT

---

DAVID D. DOWD, JR., District Judge, dissenting. I respectfully dissent from the majority's opinion because, in my view, the case below was either improperly or untimely removed, resulting in lack of jurisdiction in the district court.

Title 28, Section 1446, outlines the procedure for removal. Subsection (b) contains two paragraphs, the first of which states that "notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based[.]" The second paragraph of subsection (b) states that:

> [i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order *or other paper* from which it may first be ascertained that the case is one which is or has become removable[.] (italics added).

The Complaint in this case was filed in state court on December 18, 1998 and set forth several state law claims in five counts,[1] all based on the same factual allegations. Although the defendant/appellee, Rock Financial Corporation ("Rock" or "defendant"), received the Summons and Complaint on March 8, 1999, a Notice of Removal was not filed until May 13, 1999. Since this was well beyond thirty days from Rock's receipt of the "initial pleading," the

---

[1]The counts were: (1) Michigan Consumer Protection Act, MCL 445.901, *et seq.*; MSA 19.418(1), *et seq.*; (2) replevin; (3) unjust enrichment; (4) innocent misrepresentation; and (5) negligent misrepresentation.

complaint.[4]    On remand, the district court shall permit Plaintiff to file her third amended complaint.

## CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's order dismissing Plaintiff's second amended complaint for failure to state a claim upon which relief may be granted. We also **REVERSE** the district court's order denying Plaintiff leave to file a third amended complaint. We **REMAND** this case for further proceedings consistent with this opinion.

---

[4]The only material difference between Plaintiff's second and third amended complaints is the presence of citations to Regulation X to demonstrate that document preparation charges were not "bona fide." Plaintiff's reliance on Regulation X is misplaced and not germane to Plaintiff's TILA claim. As the district court properly concluded, the provisions of Regulation X pertain to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-17, as opposed to the TILA, and at no point in this litigation has Plaintiff sought to bring a claim pursuant to the RESPA. Plaintiff's third amended complaint does not alter her allegations pertaining to fees charged for settlement or closing, and therefore does not affect our conclusion that she has not properly pleaded a violation of the TILA with regard to those fees.

Rule 58); *Smith v. Hudson*, 600 F.2d 60, 62 (6th Cir. 1979) (explaining that district courts can properly consider Rule 59(e) motions that precede entry of judgment pursuant to Rule 58 and that "a motion which asks a court to vacate and reconsider, or even to reverse its prior holding, may properly be treated under Rule 59(e) as a motion to alter or amend a judgment") (citations omitted).

Similarly, we do not find fatal to our jurisdiction the language contained in Plaintiff's notice of appeal. While Plaintiff stated in her notice that she was "tak[ing] an appeal from" the July 19, 2000 denial of the motion to amend, it is abundantly clear to us that Plaintiff sought our review of the district court's April 11, 2000 dismissal order as well. Both parties fully briefed us on their views of the propriety of the dismissal and dedicated the majority of their time at oral argument to presenting their respective positions on the sufficiency of Plaintiff's pleadings. *See, e.g., Foman v. Davis*, 371 U.S. 178, 181 (1962) (noting, in concluding that the petitioner intended to appeal both the dismissal and denial of post-dismissal motions, that the parties briefed and argued the merits of the dismissal). Plaintiff's failure to name the April 11, 2000 dismissal order in her notice of appeal is, at most, harmless error under the circumstances of this case, and we will not view it as an obstacle to our jurisdiction. *See Am. Employers Ins. Co. v. Metro Regional Transit Auth.*, 12 F.3d 591, 594-95 (6th Cir. 1993) (concluding that failure to identify underlying judgment in second notice of appeal that named only the denial of a post-judgment motion was harmless error); *Boburka v. Adcock*, 979 F.2d 424, 426 (6th Cir. 1992) (holding that failure to name a directed verdict in notice of appeal from the denial of post-judgment motions did not defeat jurisdiction when appellant's interest in appealing the directed verdict was clear from appellant's briefs to the Court); *Petru v. City of Berwyn*, 872 F.2d 1359, 1361-62 (7th Cir. 1989) (treating notice of appeal from denial of Rule 59(e) motion as encompassing earlier judgment where the appellant's intent to appeal judgment was clear and appellee suffered no prejudice); 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND

PROCEDURE § 2818, at 192-93 (2d ed. 1995) ("if an appeal is erroneously taken from the denial of the motion, rather than from the judgment, the court will treat the appeal as being from the judgment"). *But cf. United States v. Universal Mgmt. Servs., Inc., Corp.*, 191 F.3d 750, 756 (6th Cir. 1999) (finding no appellate jurisdiction over denial of a motion to reconsider where the notice of appeal named only the prior order granting summary judgment).

## II. DISMISSAL OF PLAINTIFF'S SECOND AMENDED COMPLAINT

We review *de novo* the district court's order granting a motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). *Hammons v. Norfolk S. Corp.*, 156 F.3d 701, 704 (6th Cir. 1998). We must accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff. *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Dismissal is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

One of the primary purposes of the TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a). Empowered in 15 U.S.C. § 1604(a) to carry out the purposes of the TILA through regulations, the Federal Reserve Board promulgated Regulation Z, 12 C.F.R. § 226, "to promote the informed use of consumer credit by requiring disclosures about its terms and costs." 12 C.F.R. § 226.1(b). Prior to extending credit to a consumer in a residential mortgage transaction, among the items a creditor must disclose is the estimated finance charge the creditor will impose. 15 U.S.C. §§ 1638(a)(3), (b)(2). A creditor who fails to make the required disclosures is liable to the consumer for damages, costs, and attorney fees. § 1640(a). Plaintiff claims

claim as well the dearth of authority presented prior to the district court's April 11 dismissal order, we do not believe Plaintiff failed to act diligently in seeking to file an additional amended pleading several months after expiration of the deadline in the scheduling order. Further, because Plaintiff's request to amend was a prompt effort to remedy pleading deficiencies identified by the district court in the dismissal order – as opposed to an effort to add new claims or parties – we envision no prejudice to Defendant from granting leave to amend. *Cf. In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 438 (8th Cir. 1999) (holding that the district court did not abuse discretion in denying leave to amend as untimely when the dismissal of an earlier complaint more than half a year before informed the plaintiffs of the deficiencies they sought to cure). We conclude that the district court abused its discretion in denying leave to amend based on an absence of good cause.

To the extent that the district court found Plaintiff's third amended complaint unable to withstand a motion to dismiss for failure to satisfy the tolerance provision of § 1605(f), we reiterate our earlier conclusion that a TILA plaintiff is not obligated to plead a variance exceeding $100 to state an inadequate disclosure claim. The district court erred in refusing to allow the amendment based on its incorrect view of the TILA tolerance provision, and we therefore reverse the district court's order denying leave to file a third amended

possible prejudice to the party opposing the modification. *See Bradford*, 249 F.3d at 809 (citing *Johnson*, 975 F.2d at 609).

The district court found an absence of good cause under Rule 16(b) because Plaintiff sought to remedy the matters giving rise to dismissal of her second amended complaint. The district court based its finding on an unpublished decision of this Court, *Lower v. Albert*, Nos. 97-2122, 97-2123, 1999 WL 551414 (6th Cir. July 20, 1999). In *Lower*, a panel of this Court found that the district court did not abuse its discretion in refusing post-dismissal leave to amend when the plaintiffs sought to cure deficiencies identified in their pleading. *Lower*, 1999 WL 551414, at **3 - **4. For two reasons, however, *Lower* has little bearing on our review of the district court's denial of leave to amend in the instant case. First, this Court's unpublished decisions "are never controlling authority." *Fonaseca v. Consol. Rail Corp.*, 246 F.3d 585, 591 (6th Cir. 2001). Second, because the *Lower* Court discussed the good cause issue in a very limited fashion, we do not find that panel's disposition of the issue to be persuasive.

Under the circumstances of the instant case, we believe that Plaintiff presented good cause for requesting leave to amend after the expiration of the December 1, 1999 deadline in the scheduling order. Defendant first raised the issue of the $100 tolerance provision in its November 5, 1999 motion to dismiss the first amended complaint. Even a cursory examination of Defendant's brief in support of that motion and subsequent reply brief seeking dismissal of the second amended complaint reveals no citation of authority, other than 15 U.S.C. § 1605(f), suggesting that failure to plead a variance exceeding the tolerance would preclude a TILA disclosure claim. When she moved to amend a third time, just days after the dismissal order, Plaintiff effectively brought the absence of authority to the district court's attention, stating that no published judicial opinion had required a TILA plaintiff to allege a variance exceeding the § 1605(f) tolerance provision. Given the district court's view of the tolerance provision as a legal bar to Plaintiff's TILA

that Defendant violated the TILA by failing to disclose, as part of its finance charge, its fees for "document preparation" and "settlement or closing" prior to the settlement date. Plaintiff's second amended complaint makes a specific demand for damages equal to the "document preparation" fee.

The TILA defines "finance charge" as "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605(a). In computing the amount of the finance charge to be disclosed to the consumer, a creditor may exclude, among other items, "[f]ees for preparation of loan-related documents." § 1605(e)(2). Regulation Z similarly allows a creditor to exclude "[f]ees for preparing loan-related documents, such as deeds, mortgages, and reconveyance or settlement documents," but only "if the fees are bona fide and reasonable." 12 C.F.R. § 226.4(c)(7)(ii). In paragraph 18 of her second amended complaint, Plaintiff alleges that Defendant's previously undisclosed " 'Document preparation' fee was not bona fide and reasonable within the meaning of" the TILA. (J.A. at 176.) Plaintiff specifically alleges Defendant prepared the mortgage and promissory note but retained a fee in excess of Defendant's cost.

A finance charge also does not include "fees and amounts imposed by third party closing agents (including settlement agents, attorneys, and escrow and title companies) if the creditor does not require the imposition of the charges or the services provided and does not retain the charges." 15 U.S.C. § 1605(a). In paragraph 23 of her second amended complaint, Plaintiff alleges that Defendant required the services for which the settlement or closing fee was imposed and that the service was not "primarily" an "excludable activity." (J.A. at 177.)

## A. Failure to Plead Disclosure Variance Exceeding $100

Defendant argues, and the district court concluded, that the allegations of Plaintiff's second amended complaint are

insufficient as a matter of law because, before inviting examination of the bona fide or reasonable nature of Defendant's document preparation charges or the propriety of excluding settlement or closing fees, the "Tolerances for accuracy" provision of TILA, 15 U.S.C. § 1605(f), required Plaintiff to allege in the complaint that the amount Defendant disclosed as the finance charge varied from the amount it actually charged by more than $100. Plaintiff failed to allege this amount, Defendant argues, and therefore Plaintiff's TILA claim must fail.

Pursuant to § 1605(f), a creditor's finance charge disclosure "shall be treated as being accurate . . . if the amount disclosed as the finance charge . . . does not vary from the actual finance charge by more than $100." 15 U.S.C. § 1605(f)(1)(A). Although Defendant does not cite specific statutory, regulatory, or case authority mandating that a TILA plaintiff must allege, pursuant to § 1605(f), a finance charge disclosure variance greater than $100 to state a claim, the district court buttressed its conclusion that TILA required such an allegation on *Barry v. Mortgage Servicing Acquisition Corp.*, 941 F. Supp. 278 (D.R.I. 1996). In *Barry*, the plaintiff alleged that the defendant-lenders understated the finance charge and overstated the amount financed as a matter of practice in their consumer credit transactions. *See id.* at 279. The *Barry* defendants argued that a class action claim advanced by the plaintiff failed as a matter of law because the plaintiff had failed to allege disclosure errors exceeding $200. *Id.* at 284. In granting the defendants' motion to dismiss the plaintiff's TILA class claim for failure to allege a disclosure variance greater than $200, the *Barry* court relied upon a 1995 amendment to the TILA, codified as 15 U.S.C. § 1649(a).

Section 1649(a) provides, in relevant part:

> For any closed end consumer credit transaction that is secured by real property or a dwelling, that is subject to this subchapter, and that is consummated before September 30, 1995, a creditor or any assignee of a creditor shall have no civil,

## III. DENIAL OF LEAVE TO AMEND

We also believe the district court erred in denying Plaintiff's post-dismissal request to file a third amended complaint. The district court stated two reasons for denying Plaintiff's request to amend: failure to demonstrate good cause for delay pursuant to Fed. R. Civ. P. 16(b) and futility under its interpretation of the TILA and Fed. R. Civ. P. 12(b)(6). We ordinarily review the district court's denial of a motion to amend a pleading for abuse of discretion. *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 604 (6th Cir. 2001); *see also Morales v. Am. Honda Motor Co., Inc.*, 151 F.3d 500, 518 (6th Cir. 1998) (stating that our review of denial of Rule 59(e) motion is ordinarily for abuse of discretion). When, however, the district court denies the motion to amend on grounds that the amendment would be futile, we review denial of the motion *de novo*. *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000); *see also Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 887 (6th Cir. 1990) (reviewing district court's denial of Rule 59(e) motion *de novo* where district court rejected amended pleading as futile).

Insofar as the district court relied on Rule 16(b) as a basis for denying Plaintiff's request for leave to amend, we conclude that the district court abused its discretion. Pursuant to Rule 16(b), a scheduling order establishing deadlines for matters such as joinder and amendments to pleadings "shall not be modified except upon a showing of good cause and by leave of the district judge." Fed. R. Civ. P. 16(b). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)); *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) (joining Eighth, Ninth, and Eleventh Circuits in construing "good cause" as depending on the movant's diligence). Another relevant consideration is

*Lump sum charges*. If a lump sum charged for several services includes a charge that is not excludable, a portion of the total should be allocated to that service and included in the finance charge. However, a lump sum charged for conducting or attending a closing (for example, by a lawyer or a title company) is excluded from the finance charge if the charge is primarily for services related to items listed in § 226.4(c)(7) (for example, reviewing or completing documents), even if other incidental services such as explaining various documents or disbursing funds for the parties are performed. The entire charge is excluded even if a fee for the incidental services would be a finance charge if it were imposed separately.

12 C.F.R. § 226, Supp. I, Official Staff Interpretations, § 226.4(c)(7)2. According to this interpretation, a creditor has fairly broad, but not unlimited, authority to exclude lump sum charges for services provided by third parties. The interpretation goes so far as to allow exclusion where a third-party charge is "primarily" related to an excludable fee, such as title examination or appraisal fees. *See* 12 C.F.R. § 226.4(c)(7).

Here, for Plaintiff to claim that Defendant violated TILA by excluding the lump settlement or closing fee paid to the Title Company, Plaintiff needed, at a minimum, to identify the service provided by the Title Company. If, as Plaintiff alleges, the service was not primarily for an activity excludable from the finance charge under § 226.4(c)(7), then it would place a minuscule burden on Plaintiff to allege what non-excludable service Defendant required the Title Company to perform. *Cf. Layell v. Home Loan & Inv. Bank, F.S.B.*, 244 B.R. 345, 351 (E.D. Va. 1999) (remanding to bankruptcy court for determination of which part of a third-party document preparation charge was non-excludable). In the absence of any allegation of what non-excludable service the Title Company provided, Plaintiff's second amended complaint failed to state a TILA violation arising out of undisclosed fees for "settlement or closing."

administrative, or criminal liability under this subchapter for, and a consumer shall have no extended recission rights under section 1635(f) of this title with respect to . . .
> (3) any disclosure relating to the finance charge imposed with respect to the transaction if the amount or percentage actually disclosed –
> (A) may be treated as accurate for purposes of this subchapter if the amount disclosed as the finance charge does not vary from the actual finance charge by more than $200 . . . .

15 U.S.C. § 1649(a)(3)(A).[2] Examining the legislative history behind the 1995 amendments to the TILA, the *Barry* court concluded that Congress intended to impose a retroactive tolerance level of $200 for disclosure violations. *Barry*, 941 F. Supp. at 283-84. Although the class claims could not go forward in *Barry* because the plaintiff had not alleged disclosure errors greater than the $200 tolerance level, the plaintiff's individual TILA claim survived because § 1649(b)(1) specifically exempted individual claims filed prior to June 1, 1995 from the tolerance requirement. *See id.* at 284 n.8.

We believe that the *Barry* case supports neither Defendant's argument nor the district court's conclusion that 15 U.S.C. § 1605(f) requires a plaintiff to allege a variance of greater than $100 as an essential element of a TILA disclosure claim. First, the *Barry* case only concerned § 1649(a), which by its own terms is limited to credit transactions consummated before September 30, 1995. The credit transaction between Defendant and Plaintiff consummated on February 27, 1998, and is thus outside the scope of § 1649(a).

---

[2] The *Barry* court quoted an earlier version of 15 U.S.C. § 1649. *See Barry*, 941 F. Supp. at 282-83 (quoting 15 U.S.C. § 1649(a)(3)(A) (1996)). Congress amended § 1649 again in 1996. *See* 15 U.S.C. § 1649, Historical and Statutory Notes. Because the 1996 amendments do not materially alter the meaning of the statute, we have quoted the current version of § 1649.

*See Moore v. Flagstar Bank*, 6 F. Supp. 2d 496, 505 (E.D. Va. 1997) (explaining that the "plain language" of § 1649(a) confirms its retroactive application to transactions consummated before this date); *O'Brien v. J.I. Kislak Mortgage Corp.*, 934 F. Supp. 1348, 1363 (S.D. Fla. 1996) (noting application of § 1649(a) to pre-September 30, 1995 transactions). Second, while the district court in *Barry* dismissed the plaintiff's class claim under § 1649(a) for failing to allege a variance exceeding $200, the court allowed the plaintiff's *individual* claim to proceed, as exempt under § 1649(b)(1). Third, the district court did not address the tolerance provision of § 1605(f), also added to TILA by amendment in 1995. *See* 15 U.S.C. § 1605, Historical and Statutory Notes. Finally, and most notably, § 1649(a), the statutory basis for the *Barry* court's holding on the TILA class claim, contains clear language submitting creditors to "*no* civil, administrative, or criminal liability" arising out of a disclosure variance of less than $200. § 1649(a)(3)(A) (emphasis added). Section 1605(f), in comparison, treats disclosure variances as "accurate" if within the $100 tolerance, but does not include any language explicitly absolving creditors from liability. § 1605(f)(1). We believe these distinctions render cases, such as *Barry*, construing § 1649(a) inapposite to our examination of § 1605(f).

Our examination of § 1605(f) leads us to conclude that it does not impose an independent pleading hurdle for TILA plaintiffs. Our conclusion stems from the general nature of the TILA as a whole, as well as the intent of Congress in promulgating the tolerance provision in 1995. As a remedial statute, we must construe TILA's terms liberally in favor of consumers. *See Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 163 F.3d 948, 950 (6th Cir. 1998); *Murphy v. Household Fin. Corp.*, 560 F.2d 206, 210 (6th Cir. 1977); *see also N.C. Freed Co., Inc. v. Bd. of Governors of the Fed. Reserve Sys.*, 473 F.2d 1210, 1214 (2d Cir. 1973) ("The Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation.") (footnote and citations omitted). When we apply the TILA liberally in favor of Plaintiff, we

*also* 12 C.F.R. § 226.4(a)(2) (stating that fees charged by a third party closing agent are finance charges only if the creditor: requires the services, requires imposition of the charges, *or* retains a portion of the charge).

The HUD-1 form given to Plaintiff at closing includes a previously undisclosed "Settlement or closing fee" to the Title Office of $200. (J.A. at 213.) Plaintiff's second amended complaint alleges that the settlement or closing fee was for a service Defendant required and "was not primarily for an excludable activity." (J.A. at 177.) Defendant challenges Plaintiff's allegation regarding the settlement or closing fee as inadequate under Regulation Z.

The staff of the Federal Reserve Board has elaborated on Regulation Z's treatment of closing charges for services provided by third parties.[3] The Federal Reserve Board staff has explained:

> *Required closing agent*. If the creditor requires the use of a closing agent, fees charged by the closing agent are included in the finance charge only if the creditor requires the particular service, requires the imposition of the charge, or retains a portion of the charge. Fees charged by a third-party closing agent may be otherwise excluded from the finance charge under [12 C.F.R.] § 226.4. . . . A charge for conducting or attending a closing is a finance charge and may be excluded only if the charge is included in and is incidental to a lump-sum closing fee excluded under § 226.4(c)(7).

12 C.F.R. § 226, Supp. I, Official Staff Interpretations, § 226.4(a)(2)2. In addition, the Federal Reserve Board staff provides the following explanation for the treatment of lump sum charges:

---

[3]"Unless demonstrably irrational, Federal Reserve Board staff opinions construing the Act or Regulation should be dispositive . . . ." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980).

failure to disclose the document preparation fees. For instance, Plaintiff alleges that the document preparation charge was not reasonable. This allegation invites some degree of inquiry into the facts and circumstances of the case, generally inappropriate at the pleadings stage, although perhaps resolvable on summary judgment after discovery. *Cf. Smith v. Fid. Consumer Discount Co.*, 898 F.2d 896, 902 (3d Cir. 1990) (remanding TILA claim for resolution of material question of fact about reasonableness and bona fide nature of document preparation fees); *In re Grigsby*, 119 B.R. 479, 488 (Bankr. E.D. Pa. 1990) (quoting a truth-in-lending treatise for the principles that a fee is bona fide if the creditors' employees performed the services and reasonable depending on its comparison to charges imposed by local businesses), *vacated on state law grounds only by* 127 B.R. 759 (E.D. Pa. 1991). Plaintiff could conceivably have alleged the unreasonableness of the fees with more detail and specificity, but we do not conclude that her merely describing the fees as "not bona fide and reasonable" fails to state a claim as a matter of law.

### 2.    Fees for "Settlement or Closing"

15 U.S.C. § 1605(a) provides: "The finance charge shall not include fees and amounts imposed by third party closing agents (including settlement agents, attorneys, and escrow and title companies) if the creditor does not require the imposition of the charges or the services provided and does not retain the charges." In *O'Brien*, the Southern District of Florida provided a succinct explanation of this section: "If the creditor required a third party to perform a service, is aware that the third party will perform the service, and imposes a separate charge on the consumer for the performance of the service, the fee is a disclosable finance charge." *O'Brien*, 934 F. Supp. at 1357 (citations omitted). Other courts construing § 1605 have not viewed the final clause – "[if the creditor] does not retain the charges" – as an additional requirement for TILA liability. *See, e.g.*, *Johnson v. Fleet Fin., Inc.*, 4 F.3d 946, 949 (11th Cir. 1993); *First Acadiana Bank v. Fed. Deposit Ins. Corp.*, 833 F.2d 548, 550-51 (5th Cir. 1988); *see*

reach the conclusion that Congress' remedial purpose for TILA is best effectuated by construing the § 1605(f) tolerance provision as a potential affirmative defense, rather than as an essential element of a finance charge disclosure claim. Moreover, in comparison to the stronger language of § 1649(a) explicitly precluding liability for creditors under specified circumstances, § 1605 merely states that disclosures "shall be treated as being accurate." 15 U.S.C. § 1605(a)(1). At least one district court has refused to employ even the stronger language of § 1649(a) as a bar to a TILA claim, adhering to a more pro-consumer construction of the TILA. *See Weil v. Long Island Savings Bank*, 77 F. Supp. 2d 313, 322 (E.D.N.Y. 1999). We therefore reject as inconsistent with the purposes of TILA the district court's view that a plaintiff must allege a variance exceeding the $100 tolerance to state a claim.

Our conclusion is reinforced by the statements of Senator Sarbanes, then the ranking Democratic member and now chairperson of the Banking Committee, offered during Senate consideration of the 1995 amendments:

> This bill increases the tolerance for statutory damages, lifting the bar that determines what constitutes a violation. . . .
> This increased tolerance for errors is intended to protect lenders from the small errors of judgment that occurred in the *Rodash* case. It is obviously not intended to give lenders the right to pad fees up to the tolerance limit of $100. For example, if a delivery associated with the closing cost on a home mortgage costs $30, $30 should be charged and disclosed as part of the finance charge. A lender cannot arbitrarily raise an additional $70 simply because there is a wider tolerance.

141 Cong. Rec. S 14567 (daily ed. Sept. 28, 1995) (statement of Senator Sarbanes). Senator Sarbanes' comments, particularly his condemning the padding of fees up to the $100 tolerance, continue to demonstrate Congress' intent to protect consumers against questionable lending practices. At

the same time, as Senator Sarbanes explained, lenders also receive protection through the tolerance provision where they can show their disclosure minimally deviates from the actual amount charged. The overriding policy behind the TILA, however, remains focused on consumer protection; the responsibility to allege the minimal nature of the disclosure, and therefore the absence of a violation, should rest with the lender.

We therefore conclude that the district court erred in dismissing Plaintiff's second amended complaint for failure to allege a variance between the disclosed and actual finance charges exceeding the $100 tolerance for accuracy of 15 U.S.C. § 1605(f).

## B.   Exclusion of Challenged Fees

Although the district court focused almost exclusively on the tolerance provision in dismissing Plaintiff's second amended complaint, Defendant argues that the allegations of Plaintiff's second amended complaint fail to state a TILA disclosure claim because Defendant was under no obligation to include the fees for "document preparation" and "settlement or closing" in its presettlement disclosures. While we believe the allegations of Plaintiff's second amended complaint adequately challenge Defendant's undisclosed document preparation fee, Plaintiff's allegations regarding fees for settlement and closing do not sufficiently state that these fees were non-excludable from the finance charge.

### 1.   Fees for "Document Preparation"

15 U.S.C. § 1605(e) lists certain items a creditor shall not include in computing the finance charge. Among these items are "[f]ees for preparation of loan-related documents." § 1605(e)(2). In its similar list of excludable fees contained in 12 C.F.R. § 226.4(c), the Federal Reserve Board excludes from the finance charge "[f]ees for preparing loan-related documents, such as deeds, mortgages, and reconveyance or settlement documents," "if the fees are bona fide and

reasonable in amount."   § 226.4(c)(7)(ii); *see also* § 226 Supp. I, Official Staff Interpretations, § 226.4(c)(7)1 ("In all cases, charges excluded under § 226.4(c)(7) must be bona fide and reasonable.").

Plaintiff's second amended complaint alleges that Defendant's document preparation fee was "not bona fide and reasonable" and that Defendant imposed the charge to cover its costs of preparing the mortgage and promissory note. Plaintiff further alleges that the document preparation fee exceeded the cost of preparing the note and mortgage. Defendant contends that these allegations are conclusory and lack sufficient factual components to state a TILA violation.

Defendant argues that Plaintiff's second amended complaint demonstrates that the document preparation fee was bona fide by alleging that Defendant prepared the mortgage and note documents. Concerning the reasonableness requirement, Defendant argues that Plaintiff's allegation that the fee charged exceeded Defendant's cost is insufficient. According to Defendant, to state a claim of improperly excluded document preparation fees, Plaintiff was required to allege facts showing Defendant's charges differed from those of other local businesses. Plaintiff's complaint does not allege specific facts distinguishing Defendant's fees from others in the locality, and thus Defendant argues that Plaintiff's complaint fails to state that Defendant's fees were unreasonable and ineligible for exclusion from the finance charge.

We cannot agree with Defendant's analysis of Plaintiff's document preparation allegations. Even though some discovery has apparently taken place during the course of this litigation, the district court dismissed Plaintiff's TILA claim on a Rule 12(b)(6) motion, rather than on summary judgment. Considering only the standard applicable to motions under Rule 12(b)(6), whether "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," *Hishon*, 467 U.S. at 73, Plaintiff's complaint is not so lacking as to foreclose any recovery for