*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0442p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MATTHEW DUBAY,

> *Plaintiff-Appellant,*

*v.*

No. 06-2107

LAUREN WELLS, an individual, SAGINAW COUNTY
PROSECUTING ATTORNEY'S OFFICE, by and through
Michael D. Thomas, Prosecutor,

> *Defendants-Appellees,*

MICHAEL A. COX, Attorney General for the State of
Michigan,

> *Intervenor-Defendant-Appellee.*

---

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 06-11016—David M. Lawson, District Judge.

Argued: September 10, 2007

Decided and Filed: November 6, 2007

Before: CLAY and GIBBONS, Circuit Judges; HOOD, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Thomas J. Plachta, PLACHTA LAW OFFICES, Mt. Pleasant, Michigan, for Appellant.
Christina M. Grossi, GILBERT, SMITH & BORRELLO, Saginaw, Michigan, Joel D. McGormley,
MICHIGAN DEPARTMENT OF ATTORNEY GENERAL, Lansing, Michigan, for Appellees.
**ON BRIEF:** Thomas J. Plachta, PLACHTA LAW OFFICES, Mt. Pleasant, Michigan, for
Appellant. Christina M. Grossi, L. William Smith, GILBERT, SMITH & BORRELLO, Saginaw,
Michigan, Joel D. McGormley, MICHIGAN DEPARTMENT OF ATTORNEY GENERAL,
Lansing, Michigan, for Appellees.

---

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by
designation.

1

---

**OPINION**

---

CLAY, Circuit Judge.  Plaintiff Matthew Dubay ("Dubay") appeals from the district court's dismissal of his case pursuant to Federal Rule of Civil Procedure 12(b)(6), and its award of attorney fees to Defendants Lauren Wells ("Wells"), Saginaw County Prosecuting Attorney's Office (the "County"), and Intervenor-Defendant Michael A. Cox, Attorney General of the State of Michigan ("Attorney General").  After Wells told Dubay she was infertile and using birth control, she became pregnant with Dubay's child, had the baby, and sued for child support.  A Michigan court awarded child support and Dubay brought this action challenging the constitutionality of the Michigan Paternity Act, Mich. Comp. Laws § 722.711 *et seq*. (2002), and related statutes under the Equal Protection Clause of the Fourteenth Amendment.

For the reasons that follow, we **AFFIRM** the judgment of the district court.

## I.   BACKGROUND

This case is before us on an appeal from a dismissal for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In reviewing such a dismissal, we "must accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Financial Corp.*, 281 F.3d 613, 619 (6th Cir. 2002) (citing *Turker v. Ohio Dept. of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998)).  In the instant case, the facts alleged in Dubay's amended complaint are not in dispute.

In the fall of 2004, Dubay and Wells became involved in a romantic relationship.  At that time, Dubay informed Wells that he had no interest in becoming a father.  In response, Wells told Dubay that she was infertile and that, as an extra layer of protection, she was using contraception.  Dubay, in reliance on these assurances, participated in a consensual sexual relationship with Wells.

The parties' relationship later deteriorated. Shortly thereafter, and much to Dubay's surprise, Wells informed Dubay that she was pregnant, allegedly with Dubay's child.  Wells chose to carry the child to term and the child, EGW, was born on an unspecified date in 2005.  During the pregnancy and birth of the child, Dubay was consistently clear about his desire not to be a father.

A few weeks after EGW's birth, the County brought a paternity complaint against Dubay in the Saginaw County Circuit Court under the Michigan Paternity Act.  Wells and the County sought a judgment of filiation, child support, reimbursement for delivery of the child, and other statutory and equitable relief.  Dubay requested a stay so that the constitutional issues presented by the litigation could be resolved, but the trial court denied that request.  Dubay thereafter brought this action against Wells and the County in federal district court, seeking relief under 42 U.S.C. § 1983.

In his amended complaint, filed on March 29, 2006, Dubay alleged that the application of the Michigan Paternity Act to his case violated the Equal Protection Clause of the Fourteenth Amendment, as well as Article 1, Section 2 of the Michigan Constitution, which loosely parallels the Equal Protection Clause.  Dubay also requested costs and attorney fees under 42 U.S.C. § 1988.  The County's answer asked the district court to dismiss Dubay's complaint and requested attorney fees pursuant to § 1988.

On April 19, 2006, the Attorney General moved to intervene.  The Attorney General also filed a motion to dismiss Dubay's complaint.  On April 27, 2006, the district court granted the Attorney General's motion to intervene.

On  June 20, 2006, the parties presented the district court with a stipulation to dismiss Wells from the case.  The district judge, however, rejected the stipulation, concluding that Wells was a necessary party to the action under Federal Rule of Civil Procedure 19.

The parties argued the motion to dismiss before the district court on June 28, 2006.  On July 17, 2006, the court issued an opinion and order dismissing Dubay's complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Dubay v. Wells*, 442 F. Supp. 2d 404, 416 (E.D. Mich. 2006).  The district judge also concluded that the Attorney General was entitled to attorney fees.  *Id*. at 416.

Following the entry of this order, Wells and the County moved for attorney fees on July 20, 2006.  The Attorney General also formally moved for attorney fees on July 27, 2006.  On August 15, 2006, Dubay filed a timely notice of appeal.  On September 13, 2006, the district court granted the County's motion for attorney fees in full and Wells' and the Attorney General's motions in part.

On appeal, Dubay challenges (1) the district court's dismissal of his § 1983 claim under Rule 12(b)(6), and (2) the district court's award of § 1988 attorney fees to Defendants.  In addition to disputing these arguments as groundless, Defendants have also filed a motion requesting us to award them costs and attorney fees for this appeal pursuant to Federal Rule of Appellate Procedure 38.

## II.   DISCUSSION

### A.    THE MICHIGAN PATERNITY ACT DOES NOT VIOLATE DUBAY'S RIGHT TO EQUAL PROTECTION

#### 1.     Standard of Review

We review *de novo* the district court's grant of a defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  The motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief."  *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004) (internal quotation and citation omitted).  In analyzing the complaint, all the factual allegations must be viewed in the light most favorable to the plaintiff and the plaintiff must receive the benefit of all reasonable inferences from the facts in the complaint.  *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Village Sch. Dist.*, 428 F.3d 223, 228 (6th Cir. 2005).  We do not apply a heightened pleading standard for claims arising under 42 U.S.C. § 1983.  *Id.*

#### 2.     Analysis

Dubay seeks relief under  42 U.S.C. § 1983, which provides a remedy against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution."  In support of his § 1983 claim, Dubay alleges that the Michigan Paternity Act violates the Equal Protection Clause of the Fourteenth Amendment,[1] which guarantees that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

---

[1] Dubay cites no law and makes no argument that focuses on Article 1, Section 2 of the Michigan Constitution. Accordingly, Dubay has waived his claim that the Paternity Act violates the Michigan Constitution. *See Indeck Energy Servs., Inc. v. Consumers Energy Co.*, 250 F.3d 972, 979 (6th Cir. 2000) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation and citation omitted)).

Though Dubay does not specify which sections of the Michigan Paternity Act he challenges, a review of the statute reveals two primary contenders. First, § 2 establishes the duty of unmarried parents to support their children. This section states, in relevant part, that "[t]he parents of a child born out of wedlock are liable for the necessary support and education of the child." Mich. Comp. Laws § 722.712(1). Second, § 7 requires the court to "enter an order of filiation declaring paternity and providing for the support of the child" if the court determines that the defendant is the father of the child, if the defendant acknowledges paternity, or if the defendant has a default judgment entered against him on the issue. Mich. Comp. Laws § 722.717(1). The statute directs the court to "specify the sum to be paid weekly or otherwise" in the order of filiation. Mich. Comp. Laws § 717.717(2). The amount of support is determined according to a formula established by the state friend of the court bureau, but can be modified by the court upon a showing that the amount calculated by the formula would be "unjust or inappropriate." Mich. Comp. Laws §§ 722.717(2), 552.605. A defendant who fails to comply with an order to pay child support faces serious consequences, including wage garnishment, suspension of drivers or professional licenses, or jail. *See generally* Michigan Support and Parenting Time Enforcement Act, Mich. Comp. Laws §§ 552.601-552.650 (2002).

Dubay argues that the enforcement of the Michigan Paternity Act against him denies him the equal protection of the law in two ways.[2] First and foremost, Dubay argues that the Michigan statutes deny him the equal protection of the law by affording mothers a right to disclaim parenthood after engaging in consensual sex (*i.e.,* through abortion) while denying that right to fathers. Second, Dubay contends that Michigan law denies men equal protection by making it easier for a woman to place a child in adoption or drop the newborn off at a hospital or other social service agency. An examination of these claims under our equal protection jurisprudence, however, reveals that they lack merit.

The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). However, "the Fourteenth Amendment does not deny to [the] State the power to treat different classes of persons in different ways." *Eisenstadt v. Baird*, 405 U.S. 438, 447 (1972). In reviewing state legislation for an equal protection violation, "we apply different levels of scrutiny to different types of classifications." *Clark v. Jeter*, 486 U.S. 456, 461 (1988). In general, we start with the presumption that the statute is valid. *City of Cleburne*, 473 U.S. at 440. To overcome this presumption, the party challenging the statute must demonstrate that the statute is not rationally related to a legitimate government purpose. *Clark,* 486 U.S. at 461 (citing *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 17 (1973)). If the legislation's official classification is based on gender, however, the justification must be "exceedingly persuasive." *United States v. Virginia*, 518 U.S. 515, 532-33 (1996) (citing *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 724 (1982)). For such classifications, the burden is on the state to demonstrate that the legislation serves "important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives." *Id.* (internal quotation marks removed); *accord Nguyen v. INS*, 533 U.S. 53, 60 (2001); *Hogan*, 458 U.S. at 724; *Craig v. Boren*, 429 U.S. 190, 197 (1976). Finally, classifications affecting fundamental rights "are given the most exacting scrutiny." *Clark*, 486 U.S. at 461. Under strict scrutiny, a regulation infringing upon a fundamental right will only be upheld

---

[2]Dubay has repeatedly asserted, both in his brief and at oral argument, that his § 1983 claim is not a substantive due process challenge but rather is based upon a violation of the Equal Protection Clause. Despite these assertions, his "equal protection" arguments rely heavily upon Supreme Court cases addressing substantive due process claims. To the extent that Dubay seeks to establish a substantive due process right to disclaim fatherhood and thereby avoid paying child support, we find this argument to be foreclosed by our decision in *N.E. v. Hedges,* 391 F.3d 832, 836 (6th Cir. 2004) (holding that Kentucky statutes which require biological fathers to pay child support for biological children do not violate the substantive due process guarantees of the Fourteenth Amendment).

if it is narrowly tailored to serve a compelling state interest.  *See, e.g.*, *Reno v. Flores*, 507 U.S. 292, 305 (1993).

Dubay cannot prevail under any of these equal protection theories.  First, strict scrutiny does not apply because the Michigan Paternity Act does not affect any of Dubay's fundamental rights. In *N.E. v. Hedges*, we found that the right to privacy, articulated in the Supreme Court's substantive due process jurisprudence, does not encompass a right to decide not to become a parent after conception and birth.  391 F.3d 832, 835 (6th Cir. 2004).  *See also Rivera v. Minnich*, 483 U.S. 574, 580 (1987) (finding that a "putative father has no legitimate right and certainly no liberty interest in avoiding financial obligations to his natural child that are validly imposed by state law").   In doing so, we explicitly rejected the argument, which Dubay raises in his brief, that "fairness" dictates that men should receive a right to disclaim fatherhood in exchange for a woman's right to abortion.[3]  *Hedges*, 391 F.3d at 835.  Our discussion clarified that it is not a fundamental right of any parent, male or female, to sever his or her financial responsibilities to the child after the child is born.  *See id.*  Thus, to the extent that Dubay claims that Michigan is not affording him equal protection of the law by denying men, but not women, "the right to initiate consensual sexual activity while choosing to not be a parent," *see* Pl. Br. at 11, his argument must fail.

Second, we do not need to apply intermediate scrutiny because the Michigan Paternity Act does not discriminate on the basis of gender.  The statutory provisions that impose the obligation of support upon Dubay, and similarly situated fathers, are gender neutral.  *See* Mich. Comp. Laws § 722.712(1) ("The *parents* of a child born out of wedlock are liable for the necessary support and education of the child." (emphasis added)).  Likewise, while the provision allowing for a judgment of filiation is technically based upon gender as it only provides for an order establishing that a man is the legal *father* of the child,[4] *see* Mich. Comp. Laws § 722.717(1), this provision must be read in light of Michigan's entire statutory scheme which also requires the identification of a *mother* at the child's birth, *see* Mich. Comp. Laws § 333.2822, and establishes a judicial remedy to ensure that this mother is providing adequate support to the child.  Mich. Comp. Laws §722.721(1).  By

---

[3]Despite Dubay's protestations to the contrary, our holding in *Hedges* is consistent with the right to abortion articulated by the Supreme Court in *Roe v. Wade*, 410 U.S. 113, 153 (1973).  The woman's right to abortion is not solely, or even primarily, based upon her right to choose not to be a mother after engaging in consensual sexual intercourse. Rather, the right to abortion, as articulated in *Roe*, derives from the woman's right to bodily integrity and her privacy interest in protecting her own physical and mental health.  *See id.* (focusing on the negative mental and physical health effects that would follow from denying a woman's choice to terminate her pregnancy).

Moreover, Dubay's claim that a man's right to disclaim fatherhood would be analogous to a woman's right to abortion rests upon a false analogy.  In the case of a father seeking to opt out of fatherhood and thereby avoid child support obligations, the child is already in existence and the state therefore has an important interest in providing for his or her support.  *See Kulko v. Superior Court of California*, 436 U.S. 84, 98 (1978); *Clark*, 486 U.S. at 462 (noting the state's interest in "ensuring that genuine claims for child support are satisfied").  When a woman exercises her right to abortion, the pregnancy does not result in a live birth and there remains no child for the state to have an interest in supporting.  If the state allowed a mother to unilaterally disclaim the legal rights and obligations incident to motherhood *after the child was born*, then the law would be extending a right to mothers which it does not afford to fathers. However, the Michigan Paternity Act is clear that both "parents" of a child must provide support to the child once it is born.  Mich. Comp. Laws § 722.712(1).

[4] The district court argued that "[a] judgment of filiation under the Paternity Act itself does not make Dubay a father, it merely confirms a biological fact–that the man has sired the child–upon presentation of proper proof."  *Dubay*, 442 F. Supp. 2d at 414.  This is a flawed reading of the statute.  Liability for support does not attach to being a *biological* parent, but rather to being the *legal* parent of the child.  Section 772.712 thus does more than simply "confirm a biological fact"–it establishes that the putative father is the *legal* father, which gives rise to legal consequences.  *See Sinicropi v. Mazurek*, 729 N.W.2d 256, 266 (Mich. Ct. App. 2006) ("[T]he Legislature astutely envisioned cases in which it is discovered that the biological father is not the same individual who executed [a document acknowledging parenthood] . . . . If an acknowledgment of parentage has been properly executed, subsequent recognition of a person as the father in an order of filiation by way of a paternity action cannot occur unless the acknowledgment has been revoked.").

requiring the identification of a mother and a father for the child and by demanding that both these parents provide support to the child, the Michigan statutes do not discriminate against either sex in imposing parenting obligations and, thus, do not need to be reviewed under intermediate scrutiny.

Finally, the Michigan Paternity Act withstands rational basis review because it is rationally related to a legitimate government purpose. *Clark*, 486 U.S. at 461. "The underlying purpose of the Paternity Act is to ensure that the minor children born outside a marriage are provided with support and education." *Crego v. Coleman*, 615 N.W.2d 218, 228 (Mich. 2000). This is undoubtedly a legitimate, and an important, governmental interest. *Kulko v. Superior Court of California*, 436 U.S. 84, 98 (1978) (recognizing that a state's interest in "protecting the welfare of its minor residents" is "unquestionably important"). Moreover, the means that the statute uses to achieve this end–requiring support from the legal parents, and determining legal fatherhood based on the biological fatherhood–is substantially, let alone rationally, related to this legitimate, and probably important, government purpose.[5] Accordingly, we find that Dubay has raised no viable equal protection challenge to the Michigan Paternity Act.

However, undeterred by this lack of legal authority, and failing to cite the specific statutes that he challenges, Dubay further argues that "[u]nder Michigan's safe haven and abandonment laws, a mother can also unilaterally drop off a newborn at the hospital, police department, or clinic without any legal or financial recourse whatsoever, something not afforded men. It is also easier for a woman to place a child for adoption, and again avoid being forced into unwanted parenthood." Pl. Br. at 26. As with his challenge to the Paternity Act, this argument lacks legal foundation.

By failing to cite a single challenged statute, Dubay has essentially waived the argument. *See Indeck Energy Servs., Inc.*, 250 F.3d at 979. In any event, the laws that Dubay appears to be challenging are gender neutral and are rationally related to a legitimate government interest. *See, e.g.*, Safe Delivery of Newborns Act, Mich. Comp. Laws §§ 712.1-712.20 (2002). Dubay has produced no evidence that any of these acts were motivated by a discriminatory intent or for a discriminatory purpose. *See Bennett v. City of Eastpointe*, 410 F.3d 810, 818 (6th Cir. 2005). Accordingly, we again find that Dubay cannot demonstrate that the challenged Michigan laws violate the Equal Protection Clause.

Because Dubay has no legal basis for his claim that the Michigan Paternity Act and other unspecified statutes violate the Equal Protection Clause, he cannot show that the County's application of these laws to his case has deprived him of his constitutional rights as required for this § 1983 action. Therefore, we hold that the district court properly dismissed Dubay's case for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

**B.      THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN GRANTING ATTORNEY FEES TO DEFENDANTS UNDER 42 U.S.C. § 1988(b)**

**1.      Standard of Review**

We review the district court's award of attorney fees to a prevailing party under 42 U.S.C. § 1988 for abuse of discretion. *Revis v. Meldrum*, 489 F.3d 273, 280 (6th Cir. 2007) (citing *Berger v. City of Mayfield Heights*, 265 F.3d 399, 402 (6th Cir. 2001)). An abuse of discretion occurs when we are left with a "definite and firm conviction that the trial court committed a clear error of judgment." *Id.* (citing *Berger*, 265 F.3d at 402).

---

[5]As our analysis indicates, while we do not apply intermediate scrutiny to the Michigan Paternity Act because it does not discriminate on the basis of gender, we believe that the law would withstand such review.

### 2.      Analysis

The district court awarded attorney fee to Wells, the County, and the Attorney General under 42 U.S.C. § 1988(b). Section 1988(b) states, in relevant part, that "[i]n any action or proceeding to enforce a provision of section[] . . . 1983 . . . , the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

Dubay does not challenge the district court's substantive decision to grant Defendants attorney fees under § 1988(b).[6] Instead, Dubay contends that we should reverse because the district court awarded attorney fees without providing him with due process of law. Specifically, Dubay argues that the district court awarded "sanctions without any advance notice or opportunity to be heard." Pl. Br. at 29.

This argument lacks merit. Dubay does not cite a single case concerning the award of attorneys fees under §1988. Instead, the precedent upon which Dubay relies concerns sanctions under Rule 11, *see Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96-98 (2d Cir. 1997); *Simmerman v. Corino*, 27 F.3d 58, 62 (3d Cir. 1994), or the district court's inherent ability to sanction parties. *Chambers v. Nasco, Inc.*, 501 U.S. 32, 50 (1991). Unlike the issues presented in the aforementioned cases, an award of attorney fees under § 1988(b) is not an award of sanctions. We have not previously specified what, if anything, due process requires in the context of a § 1988(b) award.

Even assuming, however, that due process requires notice and an opportunity to be heard before awarding attorney fees under § 1988(b), Dubay's challenge to the district court would fail on its facts. The Attorney General moved for attorney fees in his motion to dismiss and the district court addressed this issue in oral argument. The County and Wells moved separately for attorney fees on July 20, 2006 and the Attorney General again formally moved for attorney fees on July 27, 2006. Dubay was provided with an opportunity to respond to all these motions and did, in fact, file a response. Consequently, Dubay received notice and the opportunity to be heard before the district court awarded attorney fees pursuant to § 1988(b).

On these facts, we cannot say that Dubay was denied due process and, thus, we are not left with the definite and firm conviction that the district court committed a clear error of judgment. Accordingly, we find that the district court properly exercised its discretion in awarding attorney fees to Defendants pursuant to § 1988(b).

### C.      AWARDING DEFENDANTS COSTS AND ATTORNEY FEES FOR THIS APPEAL, PURSUANT TO FEDERAL RULE OF APPELLATE PROCEDURE 38, IS NOT APPROPRIATE IN THIS CASE

#### 1.      Standard for Awarding of Costs and Attorney Fees under Rule 38

The awarding of costs and attorney fees under Federal Rule of Appellate Procedure 38 is a matter entrusted to our discretion. Rule 38 provides that "[i]f a court of appeals determines that an appeal is frivolous, it *may,* after a separately filed motion . . . and reasonable opportunity to respond, award just damages and single or double costs to the appellee." Fed. R. App. P. 38 (emphasis added). We have explained that "the awarding of sanctions under Rule 38 is predicated upon a finding that (1) the appeal is frivolous, and (2) sanctions are appropriate." *Allinder v. Inter-City Products Corp.*, 152 F.3d 544, 552 (6th Cir. 1998). "Although the term 'frivolous' is not subject to a ready made definition, generally '[a]n appeal is frivolous when the result is obvious or when

---

[6]Given the binding precedent of *Hedges*, which upheld a grant of attorney fees under § 1988 when considering a similar issue as a matter of first impression, 391 F.3d at 836, we consider that Dubay would be hard pressed to argue that the district court abused its discretion in this case.

the appellant's argument is wholly without merit.'" *Pieper v. Am. Arbitration Assoc.*, 336 F.3d 458, 465 (6th Cir. 2003) (quoting *Allinder*, 152 F.3d at 552 (citations omitted)). We have further indicated that "[a]n appeal is frivolous where an appellant 'essentially had no reasonable expectation of altering the district court's judgment based on law or fact.'" *Moross Ltd. Partnership v. Fleckenstein Capital, Inc.*, 466 F.3d 508, 520 (6th Cir. 2006) (quoting *Wilton Corp. v. Ashland Castings Corp.*, 188 F.3d 670, 677 (6th Cir. 1999)). "Sanctions are appropriate where 'the appeal was prosecuted with no reasonable expectation of altering the district court's judgment and for purposes of delay or harassment or out of sheer obstinacy.'" *Allinder*, 152 F.3d at 552 (quoting *Reid v. United States*, 715 F.2d 1148, 1155 (7th Cir. 1983)). However, "a finding of bad faith is not required before sanctions under Rule 38 may be imposed by this [C]ourt." *Wilton Corp.*, 188 F.3d at 677.

## 2.          Analysis

We decline to award Defendants costs and attorney fees for the appeal in this case. While we find Dubay's challenge to the Michigan Paternity Act to lack support in our equal protection jurisprudence, we do not consider his appeal of the district court's decision to be frivolous or worthy of imposing sanctions. Admittedly, our precedent in *Hedges* suggests that Dubay's claim should be viewed as "wholly without merit." *Pieper*, 336 F.3d at 465. However, we note that Dubay brought his claim under a different legal theory than the claim in *Hedges*. Indeed, in his brief and at oral argument, Dubay specifically denied that his claim arose on substantive due process grounds and instead affirmed that his constitutional challenge was based upon the Equal Protection Clause. *See* Pl. Br. at 7. As Dubay raised his claim under a constitutional theory which we had not yet rejected, we are not convinced that he had "no reasonable expectation of altering the district court's judgement." *Moross Ltd. Partnership*, 466 F.3d at 520. Moreover, because some provisions in the Michigan Paternity Act are phrased in gender specific ways, *see* Mich. Comp. Laws § 772.717(1), we do not believe that Dubay had no reasonable basis for arguing that the district court improperly applied rational basis review to his claim. Accordingly, we exercise the discretion afforded us by Rule 38 to deny Defendants' motions for costs and attorney fees.

Our decision not to award Defendants costs and attorney fees for this appeal, pursuant to Rule 38, is not inconsistent with our decision to affirm the district court's award of attorney fees under 42 U.S.C. § 1988(b). The purpose of awarding attorney fees under Rule 38 is different than the purpose for awarding such fees under § 1988(b). The primary reason for granting attorney fees to a prevailing party in a § 1983 action is to ensure that civil rights plaintiffs will not be financially deterred from vindicating their rights by the prospect of attorney costs which greatly exceed their potential recovery. *See Hudson v. Michigan*, 126 S. Ct. 2159, 2167 (2006); *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health & Human Res.*, 532 U.S. 598, 635 (2001) (Ginsburg, J., dissenting) (citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417 (1978)). In contrast, the sole purpose of awarding attorney fees under Rule 38 is to discourage litigants from wasting this Court's time and the opposing party's resources with frivolous appeals. *See In re Pioneer Inv. Serv. Co.*, 21 F.3d 428 (6th Cir. 1994) (unpublished table opinion) (citing *Transnational Corp. v. Rodio & Ursillo, Ltd.*, 920 F.2d 1066, 1072 (1st Cir. 1990)); *Fluoro Elec. Corp. v. Branford Assoc.*, 489 F.2d 320, 326 (2d Cir. 1973). As the reasons justifying the two rules are quite distinct, a decision to uphold a district court's discretionary award of attorney fees under one rule is different from a determination that such fees are appropriate under the other.

Moreover, as noted previously, we review the district court's decision to award fees under § 1988(b) for abuse of discretion. *Revis*, 489 F.3d at 280. A district court does not abuse its discretion simply because it exercises its discretion differently than the reviewing court would have done in a similar situation. *Bartholomew v. Town of Collierville*, 409 F.3d 684, 686 (6th Cir. 2005). While we are not convinced that the district judge abused his discretion in awarding attorney fees

to Defendants for the proceedings in the district court, we decline to exercise our own discretion to award attorney fees for this appeal.

### III.    CONCLUSION

For the foregoing reasons, the district court's order dismissing Dubay's § 1983 claim under Rule 12(b)(6) and awarding attorney fees to Wells, the County, and the Attorney General as prevailing parties under 42 U.S.C. § 1988(b) is **AFFIRMED**.