NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0155n.06
Filed: February 23, 2009

No. 08-3312

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| BERNARD GARNER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CITY OF CUYAHOGA FALLS, DON | ) | NORTHERN DISTRICT OF OHIO |
| ROBART, SUSAN TRUBY, VALORIE | ) | |
| WAX CARR, and VIRGIL | ) | |
| ARRINGTON, JR., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before: GIBBONS and McKEAGUE, Circuit Judges, and SHADUR, Senior District

Judge.[*]

**SHADUR, Senior District Judge.** Bernard Garner ("Garner") appeals the district

court's dismissal of his action seeking compensatory and punitive damages, as well as

reinstatement, against City of Cuyahoga Falls ("City") and several City officials: Mayor Don

Robart ("Robart"), Director of Community Development Susan Truby ("Truby"), Director of

Public Service Valorie Wax Carr ("Carr") and Director of Law Virgil Arrington, Jr.

("Arrington"). Garner, a former City employee, brought suit following his discharge from City's

employment, charging that defendants (1) had violated his federal constitutional rights under the

---

[*] The Honorable Milton I. Shadur, United States District Judge for the Northern District of Illinois, sitting by designation.

First Amendment (as incorporated by the Fourteenth Amendment) and the Due Process and Equal Protection Clauses of the Fourteenth Amendment itself and (2) had defamed him in violation of state law. After Garner filed an Amended Complaint, defendants brought a Fed.R.Civ.P. ("Rule") 12(b)(6) motion to dismiss all of the federal claims. Following full briefing the district court granted that motion and declined to exercise supplemental jurisdiction over Garner's remaining state law claim. We affirm.

## I.

Garner's employment with City began in March 1998, when he was hired as a Building and Zoning Inspector ("Inspector") in its Community Development Department. As Inspector Garner was required to inspect certain locations to ensure the safety of City citizens. In addition to serving as Inspector, Garner was also a reserve police officer for City.

On July 14, 2006 Garner was assigned to inspect an event entitled "Rockin on the River Festival" ("Festival"). At about 4:30 p.m. Garner observed several outdoor tents weighted down with open buckets of water. Because the buckets had no lids and contained a printed warning on their sides advising the public of a drowning hazard if not covered, Garner believed that the open buckets posed a health and safety risk to young children. As a result Garner approached Robert Early ("Early"), the vendor responsible for the tents, and requested that he cover the buckets. Early agreed to Garner's request, and Garner left the area to perform other duties.

At about 6 p.m. Garner returned to the Festival in his police uniform to buy dinner before he went on duty as a reserve officer at 8 p.m. While he was there, Early approached Garner's police supervisor and questioned him regarding Garner's authority and employment status. Early also complained that Garner was "picking on him." In response Garner advised his supervisor of

2

the drowning hazard and was allowed to proceed with his police duties. He then decided to eat elsewhere and left the Festival.

Immediately after Garner's evening shift started, his police supervisor summoned him back to the Festival and instructed him to go to a room where Robart, Early and Lieutenant Gramley ("Gramley"), one of Garner's supervisors, were waiting. According to Garner, Early is a financial supporter and political ally of Robart. When Garner arrived, Robart began to shout loudly at him, calling Garner derogatory and insulting names and asking him why the water buckets were a violation. Garner attempted to explain that the uncovered buckets were a safety and drowning hazard and told Robart that he was simply trying to keep City's citizens safe. Robart objected, continued to yell at Garner and spat in his face.

Although it is unclear how that meeting ended, Garner believed that Robart commenced a campaign to terminate him after the incident at the Festival. As part of that asserted plan Garner's immediate supervisor Truby demanded that Garner write a report. Truby did not provide Garner with any details about what she wanted the report to include, and although Garner submitted multiple reports to Truby, she continued to change the requirements and request additional reports. According to Garner, Truby wrote to City officials with inaccurate information regarding the July 14 incident. For example, says Garner, Truby informed Gramley that Garner had threatened to harm him physically. In addition, shortly after the Festival Robart hired an independent private investigator to follow Garner during work and non-work hours. Robart also wrote to Truby that "Mr. Garner has outlived his usefulness in the City of Cuyahoga Falls and would be better served in some other line of work."

Garner was terminated on December 18, 2006. According to Garner he has been approached by several citizens, including non-City employees, who have indicated that they heard Garner "was stealing city time by cutting his mother's grass while on city time." Garner contends those comments are false and could have come only from defendants. He also asserts that Robart, Truby, Carr and Arrington conspired to discharge him for false and inappropriate reasons. Although Carr and Arrington did hold a pre-termination hearing, Garner alleges that the hearing was "bogus" because it was "clear that their minds were made up to terminate" him on Robart's instructions. Garner also alleges that he has not "been afforded an appropriate name-clearing hearing."

On July 13, 2007 Garner filed suit in the federal district court. After defendants had filed a motion for judgment on the pleadings and the parties had submitted briefs on that motion, Garner filed his Amended Complaint, asserting the claims summarized in the first paragraph of this opinion. After defendants then filed their motion to dismiss referred to in that paragraph, on January 29, 2008 the district court granted the motion as to all federal claims, declined to exercise supplemental jurisdiction over the state law defamation claim and entered judgment for defendants. Garner timely filed his notice of appeal with this Court on February 25, 2008.

**II.**

We review de novo the district court's dismissal of a complaint under Rule 12(b)(6) (Dubay v. Wells, 506 F.3d 422, 427 (6th Cir. 2007)). Because a motion to dismiss for failure to state a claim tests that claim as stated in the complaint and is not a challenge to his factual allegations, we must construe the Amended Complaint in a light most favorable to Garner, accepting all of his factual allegations as true and drawing all reasonable inferences in his favor

4

(id.). Although a complaint's factual allegations need not be detailed, <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007) teaches that they "must be enough to raise a right to relief above the speculative level." On that score Garner's obligation to show "his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" (id.).

**III.**

Count One of the Amended Complaint alleges that defendants made false and public allegations against Garner that impaired his good name, reputation, honor and integrity and terminated him without a name-clearing hearing. Those actions, Garner claims, violated his constitutional right to procedural due process.

It is well established that a person's reputation, good name, honor and integrity are considered liberty interests protected by the due process clause of the Fourteenth Amendment (see, e.g., <u>Chilingirian v. Boris</u>, 882 F.2d 200, 205 (6th Cir. 1989), relying on the seminal decision in <u>Bd. of Regents v. Roth</u>, 408 U.S. 564, 573 (1972)). Accordingly, in the public employment context, "where a nontenured employee shows he has been stigmatized by the voluntary, public dissemination of false information in the course of a decision to terminate his employment, the employer is required to afford him an opportunity to clear his name" (<u>Burkhart v. Randles</u>, 764 F.2d 1196, 1201 (6th Cir. 1985)).

In that respect <u>Ludwig v. Bd. of Trs. of Ferris State Univ.</u>, 123 F.3d 404, 410 (6th Cir. 1997) (citations omitted) instructs that five elements must be satisfied to establish that a plaintiff was deprived of a liberty interest entitling him to a name-clearing hearing:

> First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment. Second, a plaintiff is not deprived of his liberty interest

5

when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance....Third, the stigmatizing statements or charges must be made public. Fourth, the plaintiff must claim that the charges made against him were false. Lastly, the public dissemination must have been voluntary.

Brown v. City of Niota, 214 F.3d 718, 723 (6th Cir. 2000) (emphasis added) reconfirms the addition of an essential ingredient to the mix:

Once a plaintiff has established the existence of all five elements, he is entitled to a name-clearing if he requests one.

And in that respect Quinn v. Shirley, 293 F.3d 315, 323 (6th Cir. 2002) further reconfirms that "a plaintiff's failure to request a name-clearing hearing is fatal to a claim alleging a deprivation of a liberty interest without due process." Hence, to state a viable claim a plaintiff must allege that he requested a hearing and was denied one (id. at 324).

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." But as Twombly, 127 S.Ct. at 1966 explains, a plaintiff's obligation under Rule 8(a)(2) requires "that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'" Factual allegations in a complaint must at least reasonably suggest, rather than simply be consistent with, an essential element of a claim (id. at 1965-66). In so holding Twombly rejected the oft-quoted standard in Conley v. Gibson, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," stating instead that the "phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard" (127 S.Ct. at 1969).

6

Here Garner admits he has not specifically stated that he requested a name-clearing hearing. All that he alleges is that he was not "afforded an appropriate name-clearing hearing." Garner contends that we should infer from that statement that he actually requested a hearing but didn't get one. But as the district court properly noted, the fact that a hearing was not held does not necessarily mean that Garner requested one--instead he may not have received a hearing because he failed to ask for one.

But here we need not merely choose between arguably reasonable inferences (with the possibility, then, of bringing into play the legal equivalent of baseball's "ties go to the runner"). In this instance Garner had a full opportunity to amend his pleading further to assert that he did request a hearing--<u>if</u> that were indeed so. It is more than relevant that Garner had already amended his original Complaint once, so that his counsel knew perfectly well that a further amendment was available to respond to an asserted deficiency, but instead he chose to stand pat. It must be concluded on the record before us that a request for a hearing was never made.[1]

Garner's entitlement to relief in due process terms must be based on defendants' denial of a request for a name-hearing clearing--without his having pleaded that necessary fact, he fails to meet the <u>Twombly</u> standard. We therefore affirm the district court's dismissal of Garner's due process claim.

**IV.**

Garner's second claim asserts that defendants terminated him in retaliation for his exercise of First Amendment rights. To establish a prima facie case of First Amendment

---

[1] Indeed, when probed at oral argument, Garner's counsel admitted that he could not, as an officer of the court, state that Garner had clearly and specifically asked for a name-clearing hearing.

retaliation a plaintiff must show that (1) he was engaged in constitutionally protected speech, (2) he was subjected to an adverse action or was deprived of some benefit and (3) the protected speech was a substantial or motivating factor in the adverse action (Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003)).

Although public employees' rights are subject to certain limitations, "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern" (Garcetti v. Ceballos, 547 U.S. 410, 417 (2006)). Whether a plaintiff's speech touches upon a matter of public concern is a question of law (Barnes v. McDowell, 848 F.2d 725, 733 (6th Cir. 1988)). Connick v. Myers, 461 U.S. 138, 147-48 (1983) teaches that "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Garcetti, 547 U.S. at 421 further instructs that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." As Garcetti, id. at 421-22 reasoned:

> Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen.

Even though Garner admits that he initially spoke to Early in his capacity as Inspector, he argues that he was speaking as a private citizen when he later returned to the Festival and expressed concern to his police supervisor and Robart. Garner points to several non-precedential cases decided before Garcetti in support of his position. None of those cases, however, involves

8

analogous factual allegations or is really relevant in light of the more demanding standard recently articulated by Garcetti.

When Garner's allegations are viewed in light of those principles, it is clear that his statements about the safety risks posed by Early's water buckets owed their existence to his official duties. First, when Garner spoke to his police supervisor on his first return to the Festival, he was unquestionably responding to complaints made by Early. Then Garner's second return to the Festival was at the summons of his police supervisor, who instructed him to meet with Robart, Gramley and Early. During that meeting Garner did not voluntarily announce his safety concerns, speaking instead only in response to Robart's attack on and inquiries about his earlier warning to Early. In analyzing a similar situation, Haynes v. City of Circleville, 474 F.3d 357, 364 (6th Cir. 2006) (brackets in original) found that "[t]he fact that Haynes communicated solely to his superior also indicates that 'he was speaking in [his] capacity as a public employee....'" Here too Garner was speaking only to his police supervisor and then Robart and Gramley--all his superiors--and he never communicated his concerns to other members of the public.

Garner's stated effort to keep citizens and young children safe from the water buckets emanated directly from his role and responsibility as Inspector of the Festival. Thus his original warning to Early and his further statements in defense of that warning were made pursuant to his professional duties. Because Garner's speech did not address a matter of public concern and was not constitutionally protected under the teaching of Garcetti, we also affirm the dismissal of his First Amendment claim.

## V.

Garner's final federal claim charges that defendants violated his rights under the Equal Protection Clause. Having acknowledged the fatal impact of Engquist v. Or. Dep't of Agric., 128 S. Ct. 2148 (2008) on his "class of one" theory, Garner proceeds on appeal solely on his claim of selective treatment based upon the asserted exercise of a fundamental right to freedom of speech.

But as our earlier discussion makes plain, Garner's speech was not constitutionally protected. Garner's reliance on the same arguments that he advanced in support of his First Amendment claim does nothing to change that analysis. That being the case, Garner's equal protection claim based on that speech fails as a matter of law, and the district court's dismissal of that claim is therefore affirmed as well.

## VI.

We have thus affirmed the district court's dismissal of all of Garner's federal claims. With no federal anchor remaining to moor his state law defamation claim, we also affirm the district court's without-prejudice dismissal of that claim (United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)).

## VII.

For the foregoing reasons, we affirm the district court's rulings in all respects.