NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 09a0372n.06

No. 08-5013

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
May 27, 2009
LEONARD GREEN, Clerk

JERRY GRITTON,

     Plaintiff-Appellant,

v.

WILLIAM DISPONETT, et al.,

     Defendants-Appellees.

                               /

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF KENTUCKY

BEFORE:    BATCHELDER and CLAY, Circuit Judges; and COX, District Judge.[*]

    **CLAY, Circuit Judge.**  In this First Amendment retaliation case filed pursuant to 42

U.S.C. § 1983, Plaintiff-Appellant Jerry Gritton alleges that he was unlawfully transferred from

his job based on his political affiliation. On appeal, Gritton challenges (1) the district court's

dismissal of his claims against the Kentucky Transportation Cabinet and the Republican Central

Executive Party; (2) the court's denial of his motion to alter judgment based on previously

unavailable evidence; and (3) the court's grant of summary judgment to William David

Disponett and Richard Murgatroyd. For the reasons that follow, we **AFFIRM** the judgments of

the district court.

**BACKGROUND**

_____

    [*]The Honorable Sean F. Cox, United States District Judge for the Eastern District of
Michigan, sitting by designation.

## A.     Procedural History

Plaintiff-Appellant Jerry Gritton filed suit against William David Disponett, Richard Murgatroyd,[1] the Kentucky Transportation Cabinet, and the Republican Central Executive Committee ("the Republican Party") pursuant to 42 U.S.C. § 1983, alleging that his job was unlawfully transferred because of his political affiliations in violation of his rights under the First Amendment and Kentucky law.  Defendants Murgatroyd, the Kentucky Transportation Cabinet, and the Republican Party each filed motions to dismiss the claims against them.  The district court dismissed Gritton's claims against the Kentucky Transportation Cabinet and the Republican Party, but denied Murgatroyd's motion to dismiss.

The case proceeded against Disponett and Murgatroyd, and the district court entered an order directing that discovery be completed on or before May 31, 2007.  Both remaining defendants filed motions for summary judgment and Gritton filed responsive pleadings. Subsequently, on September 21, 2007, Gritton filed a motion to extend time to complete and reopen discovery, and the court denied the motion.  The court thereafter granted summary judgment to Disponett and Murgatroyd on each of Gritton's claims, and denied Gritton's motion to alter or amend the judgment.  Gritton filed a timely notice of appeal.

## B.     Substantive Facts

Jerry Gritton was employed by the Transportation Cabinet of the Commonwealth of Kentucky until his retirement on September 1, 2006.  During the period relevant to this case, he

---

[1]Gritton filed suit against Disponett individually and in his official capacity as an Agent on the Republican Executive Committee, and against Murgatroyd individually and in his official capacity as Deputy Secretary of the Kentucky Transportation Cabinet.

held the position of Maintenance Superintendent II, which involved the supervision and direction of several workers on a road crew in Anderson County, Kentucky, where Gritton had lived and worked until his job transfer in 2004.

Gritton is a registered Democrat. He alleges that after the Republican Administration of Governor Ernie Fletcher took office in 2003, he began to hear rumors that his job would be threatened by the administration's political patronage program. Defendant Disponett campaigned for Governor Fletcher and served as the Treasurer of the Republican Executive Committee. After Governor Fletcher was elected, Disponett was supplied with a state-funded office and staff in the state capitol, where he made personnel recommendations to Governor Fletcher's staff and was classified as a volunteer. Disponett testified that individuals would routinely seek him out to inquire about positions in state government and to ask for recommendations. Disponett also lives in Anderson County, Kentucky, and testified that he has known Gritton since he was born.

Gritton testified that Bob and Edward Cook, who work for Disponett, approached him several times and indicated that they were surprised that he was still working and that he had not been transferred, given the change in administration. After hearing these comments, Gritton voiced concerns to his supervisor, Karen Doumas, and she assured him that he was a merit employee who could only be transferred under certain circumstances.

In late 2004, Disponett's nephew, Tony Disponett, approached Disponett about a position in the Anderson County Highway Department. Disponett testified that he referred his nephew to Jessica Masters, an employee who worked in the governor's office. Disponett also spoke to Dan Druen, who served as a personnel liaison between the Transportation Cabinet and the governor's

office, and informed him that his nephew needed a job that would provide him with stable employment. Disponett also approached personnel liaison Cory Meadows, told him that he was aware of a number of complaints about Gritton, and inquired about whether Gritton could be transferred.

Defendant Richard Murgatroyd, who served as the Deputy Secretary of the Transportation Cabinet, attended weekly meetings with Meadows and Druen in which Transportation Cabinet personnel decisions were discussed. In one of those meetings, Murgatroyd learned of Tony Disponett's interest in a position in Anderson County, the alleged complaints against Gritton, and the possibility that Gritton might be interested in a transfer. Murgatroyd testified that after this meeting, he "turned [the matter] over to personnel" and had no further involvement in the hiring of Tony Disponett or the transfer of Gritton. (Joint Appendix "J.A." at 246-58.)

Murgatroyd did testify, however, that he discussed possible Anderson County Highway Department personnel changes with Disponett at a restaurant one evening, although he denied discussing Tony Disponett's application. After that conversation, Murgatroyd wrote Disponett an email that stated,

> "Dave: The other night at Applebee's we were talking about Jerry Gritton. I had a note in my file that he might want to be transferred. Is that the case?"

(J.A. at 379.)

Gritton alleges that around this time, he was pressured by various individuals to transfer to Fayette County. At a September 9, 2004 meeting, Gritton's superiors, Jim Rummage and Bob Sturgeon, asked Gritton whether he would accept a transfer. Gritton declined, in part because he

wished to be close to his home so he could care for his sick wife. Gritton testified that he received a phone call from Jimmy Morgan (a friend of Gritton's and the nephew of Disponett), who told Gritton that he was "taking hits[,]" asked Gritton if he wanted to keep his job, and pressured Gritton to call David Disponett. Gritton testified that he attempted to call Disponett but that he never spoke to him.

Gritton also testified that his brother, who was a general contractor for Disponett, advised him that he had spoken with Disponett and that he should accept the transfer or he would risk being fired or transferred to a more remote location. Gritton approached Doumas with concerns, and Doumas stated that, according to Murgatroyd, Gritton no longer had a choice in the matter.

Gritton signed a Voluntary Transfer form on November 1, 2004. He testified that prior to signing the document, he informed Rummage and Sturgeon that he was agreeing to the transfer only as a result of continued pressure and a fear that he would lose his job. Gritton testified that Rummage later told him he was transferred because the state administration wanted his job. After Gritton's transfer, Tony Disponett was hired as a Superintendent II for Anderson County.

Gritton testified that he suffered a number of negative consequences as a result of the transfer. His commute time increased by an hour a day and he lost the opportunity to be close to his home so he could care for his sick wife. He also was required to pay an employment tax that did not apply in Anderson County, which resulted in a yearly loss of $2,000, and he lost the opportunity to work overtime because he was not close enough to his post to handle emergency calls. Gritton also testified that the work in Fayette County was more arduous due to an increased proximity to interstate highways and a much larger number of roads.

After his transfer, Gritton became aware that Disponett and Murgatroyd had been indicted for their alleged involvement in making unlawful personnel decisions on behalf of the Fletcher administration, which included the hiring of Tony Disponett, and that they had accepted pardons from Governor Fletcher.

## DISCUSSION

### I.

Gritton first argues that the district court erred in dismissing his claims against the Kentucky Transportation Cabinet and the Republican Party. This Court reviews *de novo* a district court's decision to grant a motion to dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). A court must construe the complaint in the light most favorable to the non-moving party, and accept all of its factual allegations as true. *See Dubay v. Wells*, 506 F.3d 422, 427 (6th Cir. 2007). In doing so, however, the court does not accept "the bare assertion of legal conclusions" as enough, nor does it "accept as true . . . unwarranted factual inferences." *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997).

The factual allegations in a complaint need not be detailed; they "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotations and citations omitted). "[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007). Further, this Court may affirm the district court's dismissal of a plaintiff's claims on any

grounds, including those not relied on by the district court. *In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 548-49 (6th Cir. 1999).

The district court dismissed Gritton's claims against the Kentucky Transportation Cabinet based on sovereign immunity. Gritton did not address the issue of sovereign immunity in his brief, and other than providing a heading that stated that "The Plaintiff stated a claim against Republican Party and Transportation Cabinet sufficient to withstand a 12(b) motion," his brief did not discuss his claim against the Kentucky Transportation Cabinet. Under *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 310-311 (6th Cir. 2005), we may treat a party's failure to pursue an argument in his appellate briefs as a waiver of the argument on appeal. We therefore hold that Gritton waived his claims against the Kentucky Transportation Cabinet.

Gritton also challenges the district court's dismissal of his claims against the Republican Party. The court granted the motion to dismiss because it found that the Republican Party was not acting under the color of state law as required by § 1983. "To state a claim for relief in an action brought under § 1983, [plaintiffs] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *American Mfrs. Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful[.]" *Id.* at 50 (quotation marks and citations omitted). This Court applies a three-part test to determine if private conduct is fairly attributable to the state:

> The public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state. . .

. The state compulsion test requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state. Finally, the nexus test requires a sufficiently close relationship (i.e., through state regulation or contract) between the state and the private actor so that the action taken may be attributed to the state.

*Tahfs v. Proctor*, 316 F.3d 584, 591 (6th Cir. 2003) (quoting *Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir. 1995)).

In his complaint, Gritton first alleges that the Republican Party acted in concert with other named defendants in violating his constitutional rights. This allegation fails to satisfy the public function and the state compulsion test because Gritton does not allege that the Republican Party had the ability to take personnel actions against him, nor does he allege that the state coerced the Party to take a prohibited action. *See Tahfs*, 316 F.3d at 591. The conspiracy allegation also fails to satisfy the nexus test because Gritton does not allege facts that establish a sufficiently close relationship between the state and the Party so as to attribute the Party's actions to the state. *See id.*

Gritton also alleges that "all of the Defendants were acting under the color of state law." (J.A. at 21-22.) This allegation is a legal conclusion that carries little weight. *See In re Sofamor Danek Group, Inc.*, 123 F.3d at 400 (holding that this Court does not accept "the bare assertion of legal conclusions" or "unwarranted factual inferences" when determining if a plaintiff has stated a claim).

Gritton relies upon *Rutan v. Republican Party*, 497 U.S. 62, 69 (1990), in his arguments to the contrary. He argues that political organizations such as the Republican Party can be held

liable for First Amendment violations filed pursuant to § 1983 for their participation in operating a political patronage system that conditions public employment on "political allegiance." *Id.* Gritton's reliance on *Rutan* is misguided. The *Rutan* Court never reached the issue of whether the Republican Party was a state actor because the plaintiffs' claims had been dismissed on other grounds. *Rutan* does not support a conclusion that the Republican Party should *always* be considered a state actor. Instead, a plaintiff's claims against a state actor must satisfy the three-part state-actor test. *See Tahfs*, 316 F.3d at 591.

In sum, after applying the state-actor test, the district court properly concluded that the complaint "d[id] not allege any specific act of the Republican Party, nor d[id] it allege that any defendant acted at its direction or with its authorization." (J.A. at 31.) Consequently, we find that the court did not err in dismissing Gritton's claims against the Republican Party pursuant to Rule 12(b)(6).[2]

## II.

Gritton next argues that the district court abused its discretion in denying his motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e) because significant new evidence from two witnesses had become available. This Court reviews a district court's decision to alter or amend its judgment for abuse of discretion. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 569 (6th Cir. 2008).

---

[2]Even if Gritton were to establish that the Republican Party were a state actor, Gritton's claims against the Republican Party would fail because of the conclusory nature of Gritton's allegations. *See Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004) ("Claims of conspiracy must be pled with some specificity: vague and conclusory allegations that are unsupported by material facts are not sufficient to state a § 1983 claim.")

We have held that "[t]he purpose of Rule 59(e) is to allow the district court to correct its own errors, sparing the parties and appellate courts the burden of unnecessary appellate proceedings." *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008) (quotation marks and citations omitted). "Rule 59(e) motions serve a limited purpose and should be granted for one of three reasons: (1) because of an intervening change in controlling law; (2) because evidence not previously available has become available; or (3) because it is necessary to correct a clear error of law or prevent manifest injustice." *General Truck Drivers, Chauffeurs, Warehousemen & Helpers, Local No. 957 v. Dayton Newspapers, Inc.*, 190 F.3d 434, 445 (6th Cir. 1999).

Here, Gritton sought the admission of statements from Dan Druen and Missy McCray.[3] He argues that the statements have direct relevance to Murgatroyd and Disponett's efforts to violate his First Amendment rights, and that they constitute previously unavailable evidence because they had been shielded as part of the grand jury indictments of Disponett and Murgatroyd.

The district court denied Gritton's motion because it found that he did not allege a change of law or a clear error of law, and that the alleged "new evidence" was not previously

---

[3]Gritton submitted an unsworn statement in which Druen identified Murgatroyd as a person substantially involved in Gritton's transfer and indicated that Murgatroyd was "obsessed" with replacing Democrats with loyal Republicans. (J.A. at 668-69.) Druen stated that he met frequently with Disponett, described how Disponett arranged for the hiring of his nephew, and discussed how Disponett was a key figure in placing Republicans in merit positions in the Transportation Cabinet. Gritton also submitted a sworn statement from McCray in which she stated that Gritton was transferred specifically to create a job opening for Tony Disponett, and that she believed that merit system jobs "were being created and/or filled as a result of political reasons." (J.A. at 746.) McCray stated that the personnel department performed background checks and explained "I think they're looking at the registrar for Republican or Democrat, how you voted, how you're registered to vote and if you contributed any monetary contributions to either side." (J.A. at 747-48.)

unavailable. The court stated that Gritton "had ample opportunity to investigate [those] matter[s], to interview or notice the depositions of Mr. Druen and Ms. McCray, and to timely obtain the evidence they had to offer or note and attest to his inability to obtain it." (J.A. at 36.)

We agree that the evidence was not previously unavailable. While the *statements* of Druen and McCray might have been unavailable to Gritton, Gritton cannot reasonably contend that he was unaware of the existence of those individuals or their potential knowledge of facts relevant to the case prior to the close of discovery. Although Gritton argues that Druen was previously uncooperative, the district court properly noted that he never sought to obtain a subpoena to compel Druen to testify and that he provided no persuasive reason for failing to do so.[4]

We have advised that "[w]here the full period for pretrial discovery has run its course, a party should generally be precluded from reopening discovery months after it has closed in a last-ditch attempt to salvage a deficient claim or defense." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1114 (6th Cir. 2001). Here, discovery had run its course, and the district court did not abuse its discretion in denying Gritton's motion to re-open discovery or in denying Gritton's subsequent motion to alter or amend judgment.

**III.**

---

[4]The district court also noted that even if it were to reconsider defendants' motions for summary judgment using the affidavits submitted by Gritton, the court could not consider Druen's unsworn statement. Druen asserted his Fifth Amendment right against self-incrimination in response to questions about his involvement in the events giving rise to Gritton's case, and the court found that "his unsworn statement - even if considered otherwise admissible – must be stricken on those [Fifth Amendment] grounds and not considered by the Court." (J.A. at 37 (citing *Tolliver v. Federal Republic of Nigeria*, No. 03-2341, 2005 WL 783350, at *2 (6th Cir. April 8, 2005)).)

In his final assignment of error, Gritton argues that the district court erred in granting summary judgment to Defendants Disponett and Murgatroyd because he has presented questions of material fact regarding his First Amendment retaliation claims.

This Court reviews a district court's grant of a motion for summary judgment *de novo*. *Miller v. Admin. Office of the Courts*, 448 F.3d 887, 893 (6th Cir. 2006). A moving party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When a court reviews the record, it is to draw all inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 577 (1986). Ultimately, the proper inquiry is whether the state of the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Stromback v. New Line Cinema*, 384 F.3d 283, 292 (6th Cir. 2004).

To establish a prima facie case of First Amendment retaliation pursuant to 42 U.S.C. § 1983, Gritton must establish three elements:

> (1) that he was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused him to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of his constitutional rights.

*Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 715 (6th Cir. 2001); *see also Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

The district court concluded, and Defendants appear to concede, that membership in a political party is a constitutionally protected activity. The parties dispute whether the transfer constituted an adverse action, but we decline to reach that issue because we find that Gritton fails to establish that his transfer was motivated at least in part as a response to the exercise of his constitutional rights.

The analysis of a defendant's motives in retaliation claims is well established: the plaintiff has the burden of establishing that his protected conduct was a motivating factor behind any harm, and then the burden of production shifts to the defendant, who must show that he would have taken the same action in the absence of the protected activity. *See Thaddeus-X*, 175 F.3d at 399; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (discussing the burden shifting analysis that applies to summary judgment motions).

Gritton fails to establish a causal connection between his transfer and his political affiliation. Gritton essentially argues that because he is a Democrat, and because Disponett and Murgatroyd are Republicans who knew that Gritton was a Democrat, it follows that Disponett and Murgatroyd retaliated against him in violation of the First Amendment when they transferred him.

Other than this assertion, Gritton points to no admissible evidence that creates a genuine issue of material fact as to whether his political affiliation was a basis for his transfer. He did not present admissible incriminating statements by Defendants, patterns of discriminatory treatment of Democrats, or other evidence that might put his political affiliation into play. To be sure, Gritton might have survived summary judgment if he had timely submitted the statements

of Druen and McCray. Those statements could lead a juror to believe – at least arguably – that Gritton was transferred because the administration was seeking to place Republicans in protected positions to gain political favor. However, as discussed above, Gritton offers no compelling argument as to why he did not pursue evidence from these potentially material witnesses within the discovery deadlines, and the district court was acting within its discretion when it denied Gritton's motion to re-open discovery.

Without the aforementioned statements, the remaining evidence that Gritton presents establishes that Defendants intentionally sought to transfer him, even though he was a merit employee who could not be fired or transferred except for cause. As the district court properly noted, the evidence indicates that this is a case where individuals in a position of power used, and likely abused, their authority to pressure Gritton to transfer so they could give a favorable position to Disponett's nephew. While the alleged actions might violate the terms of Gritton's employment contract or the terms of the state employee merit system, they do not establish that Gritton's transfer was motivated by his exercise of his constitutional rights.

Because Gritton points to no admissible evidence to establish that his political affiliation was a basis for his transfer, we conclude that the district court did not err when it held that Gritton did not establish a causal connection between his transfer and the protected activity. Consequently, we affirm the district court's grant of summary judgment to Defendants Disponett and Murgatroyd.

**CONCLUSION**

For the reasons stated above, we **AFFIRM** the judgments of the district court.